55 P.3d 597 (2002)
147 Wash.2d 476
In re DETENTION OF Eddie Leon WILLIAMS, Jr., Petitioner.
In re Detention Of Darren R. Strong, Petitioner.
In re Detention Of David William McCuistion, Petitioner.
No. 71235-2.
Supreme Court of Washington, En Banc.
Argued March 19, 2002.
Decided October 10, 2002.
*598 David Trieweiler, Kevin McCabe, Seattle, for Petitioners.
Norm Maleng, King County Prosecutor, David Hackett, Deputy, Seattle, for Respondent.
Eric Nielsen, Terrence Kellogg, Seattle, Christine Gregoire, Attorney General, Sarah Sappington, Asst., Seattle, from Consolidated Case.
IRELAND, J.
Eddie Williams and Darren Strong sought review of a Court of Appeals' decision holding that Civil Rule 35[1] applies to sexually violent predator commitment proceedings under chapter 71.09 RCW. David McCuistion sought discretionary review of the trial court's ruling on the same issue.
We hold that the rules of statutory construction require a finding that the State is not entitled to a CR 35 mental examination of an individual for whom the State seeks commitment as a sexually violent predator. We reverse the trial courts' orders granting the State's motions for CR 35 mental examinations of Strong and McCuistion and affirm the trial court's denial of the State's renewed motion for a CR 35 examination of Williams.

*599 FACTS AND PROCEDURAL HISTORY
Williams
The King County Prosecuting Attorney filed a petition to commit Williams as a sexually violent predator under RCW 71.09.030 on January 25, 1999while Williams was serving a sentence for third degree assault. Williams had been previously convicted of a sexually violent offense, second degree rape, in 1985. During his incarceration for assault, Williams was evaluated by Dr. Iris Rucker, a Department of Corrections psychologist, to determine if Williams met the statutory definition of a "sexually violent predator."[2] After conducting clinical interviews and administering psychological tests, Dr. Rucker prepared a written report, dated January 23, 1999. In that report, Rucker summarized her findings as follows:
[G]iven the comprehensive review of Mr. Williams and his records, it is the opinion of this examiner that he does meet the statutory definition of a sexually violent predator. Mr. Williams' past sexual conduct and the risk factors reviewed indicate that if he were released into the community, he is at a very high risk to reoffend by committing predatory acts of a sexually violent nature against women. It is the opinion of the examiner that if Mr. Williams is to be at large, it is more likely than not that he will engage in future acts of sexual violence and that there are no less secure alternatives than that he be housed in a facility that is locked/secured.
Clerk's Papers (CP) at 132.
The prosecutor retained Dr. Leslie Rawlings, a licensed psychologist, to further evaluate Williams for commitment. Dr. Rawlings conducted a records review and prepared a sworn declaration in which he stated: "[I]t is my professional opinion that Mr. Williams is more likely than not to engage in predatory acts of sexual violence if he is not confined to a secure facility." CP at 21.
After a 72-hour probable cause hearing conducted on February 9, 1999, the trial court ordered Williams "remanded to the custody of the Department of Social and Health Services at the Special Commitment Center in Steilacoom for an evaluation as described in RCW 71.09.040." CP at 67, 69.
Williams was unwilling to voluntarily participate in an interview with Dr. Rawlings, the prosecutor's expert. In August 1999, the State moved to compel a CR 35 mental examination. In his declaration supporting the motion, Rawlings stated:
It is my standard and preferred practice to personally interview people whom I evaluate within a reasonable period prior to offering my opinion regarding their current condition. In addition, a clinical interview of Mr. Williams, along with psychological and plethysmograph testing, will help ensure that I have a comprehensive set of data sources to allow for a full, complete, and current evaluation.
CP at 77-78.
Williams opposed the motion, stating: "The State seeks to intrude into the mind, and body, of Mr. Williams to ask him questions about his most intimate sexual thoughts, his sexual history, his sexual fantasies and to physically test his sexual arousal to sexually explicit material." CP at 135.
The trial court issued the following order:
The above-entitled Court, having heard a motion to compel a psychiatric and psychological examination of the respondent, Eddie Leon Williams, Jr., and the Court having reviewed the materials in support of, and in opposition to, said motion, and the Court having concluded that compelling the respondent to submit to such an examination is not warranted by the Civil Rules, nor by the provisions of RCW 71.09
IT IS HEREBY ORDERED that the state's motion is denied, and the respondent need not submit to a psychiatric *600 and/or psychological examination against his will.
CP at 175.
On December 10, the court denied the State's renewed motion for a CR 35 examination without comment. The State then sought discretionary review of the issue in the Court of Appeals.
Williams was accepted and consolidated with In re Detention of Darren Strong for review. In re Det. of Williams, 106 Wash. App. 85, 92, 22 P.3d 283 (2001). The Court of Appeals held that the State may obtain a CR 35 examination in a sexually violent predator proceeding upon a showing of good cause and remanded the matter to the trial court to determine whether good cause existed to grant the State's renewed CR 35 motion for a mental examination by Dr. Rawlings. Williams sought review by this court.
Strong
The King County Prosecuting Attorney filed a petition to commit Darren Strong as a sexually violent predator on August 25, 1999while Strong was serving a sentence for second degree assault. Strong had been previously convicted of two sexually violent offenses, first degree child molestation and first degree rape of a child, in 1990. During his incarcerations, Strong was evaluated twice for commitment as a sexually violent predator by Dr. Paul C. Daley, a consulting psychologist with the Clallam Bay Corrections Center where Strong was housed. In his written report of February 11, 1999, Dr. Daley stated as follows:
Mr. Strong has committed a sexually violent offense (rape of a child first degree, child molestation first degree) as well as at least one crime (if not more for which he was not charged) wherein the crime, while not classified as a sexual crime, was clearly sexually motivated; ... he clearly suffers a "mental abnormality" or personality disorder... and ... it is clear that his mental condition makes it likely that he will continue to engage in predatory sexual violence. This examiner would rate Mr. Strong at the highest possible risk for continued sexual predation. He is the prototype of the type of person for whom civil commitment for sexual predator laws were made.
CP at 550.
The prosecutor retained Dr. Richard Packard, a licensed psychologist, to further evaluate Strong for commitment. Because Strong declined to participate in this evaluation, Packard based his assessment on a review of the available records. In his report of July 30, 1999, Dr. Packard concluded:
Given the nature of Mr. Strong's mental abnormality, personality disorder and the characteristics of his history and offenses, and together with the lack of any specialized treatment, his present denial of ... any sexual problems, and the lack of a knowledgeable support system in the community capable of supervising such a multi-problem individual, it is my professional psychological opinion that Mr. Strong is more likely than not to continue to engage in predatory acts of sexual violence if not confined to a secure facility.
CP at 597.
Following a hearing in accordance with RCW 71.09.040, the trial court found probable cause to believe that Strong is a sexually violent predator. The court ordered Strong held in custody at the Special Commitment Center pending trial. Strong was ordered to cooperate fully and completely in an evaluation as described in RCW 71.09.040(4).
Before trial, the State moved under CR 35 for Strong to submit to an interview and psychological testing to be conducted by Dr. Packard "[i]n order to arrive at the most complete and best informed opinion." CP at 203. The trial court granted the motion over Strong's objection, finding that: (1) Strong's mental condition is in controversy in the action; (2) Packard specializes in the evaluation and treatment of sex offenders; and (3) good cause exists for ordering Strong to submit to the examination.
The Court of Appeals consolidated Williams and Strong for review. Williams, 106 Wash.App. at 92, 22 P.3d 283. In Strong's case, the court held that the trial court did not abuse its discretion in ordering a CR 35 examination by Dr. Packard.
*601 McCuistion
The Pierce County Prosecuting Attorney filed a petition to commit David McCuistion as a sexually violent predator on October 15, 1998while McCuistion was serving a sentence for third degree rape and third degree assault. McCuistion had been previously convicted of a sexually violent offense, attempted indecent liberties, in 1980. Dr. Savio Chan conducted an interview and psychological evaluation of McCuistion during his incarceration for rape and assault. On May 21, 1998, Dr. Chan made an additional evaluation at the request of the Department of Corrections End of Sentence Review Committee. McCuistion declined to participate in the second evaluation. Based on the materials available for review, Chan opined "that Mr. McCuistion meets the criteria of a Sexually Violent Predator as defined in RCW 71.09, and that there is sufficient grounds to petition the court to detain him for further assessment." Resp't's Br., Attach. F at 9.
The prosecutor retained Dr. Richard Packard to conduct an additional evaluation in order to determine if McCuistion met the criteria of a sexually violent predator. McCuistion decided not to participate in the evaluation, so Packard conducted a review of available records. In his report dated September 30, 1998, Dr. Packard concluded:
Given the nature of Mr. McCuistion's mental abnormality, personality disorder, substance abuse disorder and the characteristics of his history, offenses, and anticipated release circumstances together with the lack of any specialized treatment, his continuing denial of both any sexual problems and the commission of many of his convicted offenses, and the lack of a knowledgeable support system in the community, it is my professional psychological opinion that Mr. McCuistion is more likely than not to continue to engage in predatory acts of sexual violence if not confined to a secure facility.
Mot. for Discretionary Review (COA), Ex. 4, at 28-29.
The trial court conducted a hearing on October 29, 1998 and found probable cause to believe McCuistion was a sexually violent predator. The court ordered McCuistion transported to the Special Commitment Center for a custodial detention evaluation.
In a letter dated December 28, 1998, Dr. Packard provided the State with an addendum to his evaluation report "in order to keep as up-to-date as possible with the current research on these cases and provide further scientifically-based evidence regarding Mr. McCuistion's likely risk for sexual and violent reoffense." Br. of Pet'r, App. F at 3. In the addendum, Packard stated as follows:
It continues to be my professional psychological opinion that Mr. McCuistion has a mental abnormality and a personality disorder that predispose him to commit criminal sexual acts, particularly against adolescent and adult females, and especially strangers. Furthermore, it continues to be my professional psychological opinion that Mr. McCuistion is more likely than not to continue to engage in predatory acts of sexual violence if not confined to a secure facility.
Id.
In accordance with RCW 71.09.040(4), Dr. Vincent Gollogly, a licensed psychologist at the Special Commitment Center, completed an assessment of McCuistion. McCuistion refused to participate in an interview because his attorney was not present, so the evaluation was based on historical records and discovery material. In his written evaluation dated December 30, 1998, Dr. Gollogly states: "It is my clinical opinion that ... Mr. McCuistion meets the criteria under 71.09.020(1) for civil commitment as a Sexually Violent Predator." Br. of Pet'r, App. G at 20 (emphasis omitted).
At the prosecutor's request, the Attorney General assumed prosecution of the matter. In July 2000, the State sought an order for a mental examination under CR 35 by Dr. Packard. In his declaration in support of the State's motion, Packard stated: "Given the indefinite nature of a commitment under RCW 71.09, I believe it is important to ensure that I have left no stone unturned in fully evaluating Mr. McCuistion." Mot. for Discretionary Review (COA), Ex. 10, at 2.
*602 The trial court granted the State's motion for an examination by Dr. Packard, and McCuistion sought interlocutory review in the Court of Appeals. A court commissioner issued a ruling denying review, and a panel of judges denied McCuistion's motion to modify the commissioner's ruling.
This Court granted McCuistion's motion for discretionary review and consolidated the matter with Williams and Strong for consideration.

ISSUE
The common issue presented by these three cases is whether CR 35 is applicable in chapter 71.09 RCW proceedings.

ANALYSIS
Standard of Review
At issue in these consolidated cases is the interpretation of chapter 71.09 RCW. A trial court's interpretation of a statute is a question of law that is reviewed de novo. W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wash.2d 599, 607, 998 P.2d 884 (2000).
Chapter 71.09 RCWSexually Violent Predators
When a person who has been convicted of a sexually violent offense may meet the statutory criteria of a sexually violent predator, the agency with jurisdiction (e.g., the department of corrections, the indeterminate sentence review board, or the department of social and health services) is to refer the person in writing to the prosecuting attorney of the county where the person was charged three months before his or her release from total confinement. RCW 71.09.025(1)(a). The agency is to provide the prosecutor with all relevant information, including all records relating to the psychological or psychiatric evaluation and/or treatment of the person and a current mental health evaluation or mental health records review. RCW 71.09.025(1)(b).
When the person's sentence is about to expire, the prosecuting attorney of the county where the person was convicted or charged, or the attorney general, may file a petition alleging that the person is a sexually violent predator and stating sufficient facts to support the allegation. RCW 71.09.030.
Upon the filing of such a petition, "the judge shall determine whether probable cause exists to believe that the person named in the petition is a sexually violent predator. If such determination is made the judge shall direct that the person be taken into custody." RCW 71.09.040(1).
The statute provides for a hearing to contest the probable cause determination as follows:
Within seventy-two hours after a person is taken into custody pursuant to subsection (1) of this section, the court shall provide the person with notice of, and an opportunity to appear in person at, a hearing to contest probable cause as to whether the person is a sexually violent predator. At this hearing, the court shall (a) verify the person's identity, and (b) determine whether probable cause exists to believe that the person is a sexually violent predator. At the probable cause hearing, the state may rely upon the petition and certification for determination of probable cause filed pursuant to RCW 71.09.030. The state may supplement this with additional documentary evidence or live testimony.
RCW 71.09.040(2).
If the probable cause determination is made, the judge shall direct that the person be transferred to an appropriate facility for an evaluation as to whether the person is a sexually violent predator. The evaluation shall be conducted by a person deemed to be professionally qualified to conduct such an examination pursuant to rules developed by the department of social and health services .... In no event shall the person be released from confinement prior to trial.
Former RCW 71.09.040(4)(1995).
The statute also provides for trial following a hearing:
Within forty-five days after the completion of any hearing held pursuant to RCW 71.09.040, the court shall conduct a trial to determine whether the person is a sexually *603 violent predator. The trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the due administration of justice, and when the respondent will not be substantially prejudiced .... The person shall be confined in a secure facility for the duration of the trial.
RCW 71.09.050(1).
Civil Rule 35
Under CR 35, when the mental condition of a party is in controversy,
the court in which the action is pending may order the party to submit to a ... mental examination by a physician or psychologist.... The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made. The party being examined may have a representative present at the examination, who may observe the examination but not interfere with or obstruct the examination. Unless otherwise ordered by the court, the party or the party's representative may make an audiotape recording of the examination, which shall be made in an unobtrusive manner.
Former CR 35(a)(1993).
Statutory Interpretation
The sexually violent predator statute, chapter 71.09 RCW, is civil in nature. In re Pers. Restraint of Young, 122 Wash.2d 1, 23, 857 P.2d 989 (1993). The civil rules "govern the procedure in the superior court in all suits of a civil nature" with the exceptions set out in CR 81. CR 1. In pertinent part, CR 81 states that "[e]xcept where inconsistent with rules or statutes applicable to special proceedings, these rules shall govern all civil proceedings." CR 81(a) (emphasis added).
"Proceedings under chapter 71.09 RCW are special proceedings within the meaning of CR 81." In re Det. of Mathers, 100 Wash.App. 336, 340, 998 P.2d 336 (2000).
The matters before us turn on whether CR 35a civil discovery ruleis inconsistent with provisions for special proceedings under chapter 71.09 RCW.
Williams, Strong, and McCuistion (Petitioners) emphasize that they have already been subjected to numerous examinations and tests, which resulted in detailed reports and conclusions by psychologists that they should be committed as sexually violent predators. In addition, they assert that the results of their evaluations as mandated by RCW 71.09.040(4) can be used by the State at trial. Therefore, they argue that additional examinations are unwarranted.[3]
Petitioners argue that CR 35 is inconsistent with the statute and does not apply to statutory sexually violent predator proceedings. They cite In re Detention of Aguilar, 77 Wash.App. 596, 892 P.2d 1091 (1995), and In re Detention of Broer, 93 Wash.App. 852, 957 P.2d 281 (1998), to support their proposition.[4]
As the State points out, however, Aguilar and Broer address only the special context of the evaluation required by RCW 71.09.040(4), and not the statute in its entirety. Aguilar submitted to the statutory evaluation and argued on appeal that the results should have been inadmissible because the trial court failed to find good cause for the evaluation under CR 35. Division Three of the Court of Appeals rejected Aguilar's argument, *604 holding that "[s]tatutory procedural rules for special proceedings ... supersede general civil rules such as CR 35(a)." Aguilar, 77 Wash.App. at 600, 892 P.2d 1091.
Broer was held in contempt for refusing to comply with a court-ordered statutory evaluation. On appeal, Broer argued that the trial court erred in ordering the evaluation without the requisite showing of good cause under CR 35. Division One of the Court of Appeals adopted the Aguilar reasoning: "[T]he statute controls and there is no requirement for a CR 35 showing of good cause for a court to order a mental examination in this special proceeding." Broer, 93 Wash. App. at 864, 957 P.2d 281.
In order to interpret a statute, each of its provisions "should be read in relation to the other provisions, and the statute should be construed as a whole." Weyerhaeuser Co. v. Tri, 117 Wash.2d 128, 133, 814 P.2d 629 (1991) (citing State v. Sommerville, 111 Wash.2d 524, 531, 760 P.2d 932 (1988)).
RCW 71.09.040 and .050 set out the commitment proceedings to determine whether the person is a sexually violent predator including a probable cause hearing, transfer for evaluation, confinement, and trial. Apart from the evaluation to be conducted when the probable cause determination is made, these sections are silent about mental examinations during discovery.
In contrast, a subsequent section of the statute specifically addresses the parties' rights at a show cause hearing following a petition for conditional release or unconditional discharge of a person who has been committed as a sexually violent predator:
[T]he committed person shall be entitled to be present and to the benefit of all constitutional protections that were afforded to the person at the initial commitment proceeding. The prosecuting agency or the attorney general if requested by the county shall represent the state and shall have a right to a jury trial and to have the committed person evaluated by experts chosen by the state. The committed person shall also have the right to a jury trial and the right to have experts evaluate him or her on his or her behalf and the court shall appoint an expert if the person is indigent and requests an appointment.
Former RCW 71.09.090(2)(1995) (emphasis added).
The Legislature has expressly provided that evaluations by experts are allowed in the proceeding following commitment as a sexually violent predator. In the absence of such statutory language for pretrial discovery, it can be inferred that the Legislature did not intend for the State to conduct such evaluations before commitment. Under expressio unius est exclusio alterius, a canon of statutory construction, to express one thing in a statute implies the exclusion of the other. Landmark Dev., Inc. v. City of Roy, 138 Wash.2d 561, 571, 980 P.2d 1234 (1999). Omissions are deemed to be exclusions. State v. Williams, 29 Wash.App. 86, 91, 627 P.2d 581 (1981).
The statute expressly provides for postcommitment evaluation, but it makes no mention of evaluations during pretrial discovery. CR 35 is inconsistent with the special proceedings set out in chapter 71.09 RCW. We hold that the mental examination by the State's experts of a person not yet determined to be a sexually violent predator is limited to the evaluation required under RCW 71.09.040(4).
Additional Issues on Appeal
Petitioners have presented additional issues for review by this Court. Those issues include: (1) untimely appeal of the State's CR 35 motion (Williams); (2) video deposition of the alleged sexually violent predator (Williams); (3) speedy trial under RCW 71.09.050 (Williams); and (4) discovery of Social Security records (Strong).
Untimely Appeal
Williams renews his argument that the State's failure to timely appeal the denial of its first CR 35 motion precludes appellate review. He asserts that the time limitation of CR 59(b) is controlling. However, CR 59(b) explicitly applies to a motion for reconsideration filed after the entry of judgment. In the matter before us, the State filed a renewed motion for CR 35 examination and *605 then sought interlocutory review of the decision denying that motion. The State's notice for discretionary review was filed within the time allowed under RAP 5.2(b), the applicable rule. The Court of Appeals did not err in granting review of the trial court's order denying the State's renewed motion for CR 35 examination.
Video Deposition
Several months after the trial court denied its motion to compel a CR 35 mental examination, the State noted a video deposition of Williams. Williams moved to quash the deposition, and the trial court ordered that Williams "may decline to have his deposition taken; provided, however, that respondent [Williams] by declining to be deposed, may not testify at trial." CP at 395-96.
The Court of Appeals correctly concluded that the trial court abused its discretion in issuing the order because there was no tenable basis in the record to quash the deposition. Chapter 71.09 RCW does not address the videotaping of depositions. Therefore, the civil rules are not inconsistent with the statute and are applicable to this issue. CR 30(b)(8) allows a party to videotape the deposition of another party without leave of court provided that written notice is served not less than 20 days before the deposition date. The State complied with this requirement.
Speedy Trial
The sexually violent predator statute provides for a trial following a probable cause hearing as follows: "Within forty-five days after the completion of any hearing held pursuant to RCW 71.09.040, the court shall conduct a trial to determine whether the person is a sexually violent predator." RCW 71.09.050(1).
Williams argues that he has been deprived of a speedy trial because the State sought discretionary review but did not obtain an order staying the proceeding during the pendency of the appeal. However, proceedings under the sexually violent predator statute are civilnot criminal. The Rules of Appellate Procedure limit the circumstances under which the State may appeal in a criminal case. RAP 2.2(b). The rules provide no comparable provision for civil actions. Following the grant of discretionary review by the appellate court, the trial court did not have authority to engage in a trial. RAP 7.2. The Court of Appeals did not err in rejecting Williams' arguments on this issue.
Social Security Records
In January 2000, the State served Strong's counsel with discovery requests that included interrogatories and requests for production. The State requested that Strong produce any document related to his "request for social security benefits based on a claim of pedophilia, including evaluation reports, applications and all documents contained in respondent's social security office file." CP at 421.
Strong objected to the request, claiming the material is privileged and/or nondiscloseable pursuant to federal law and the work product privilege. The trial court granted the State's motion to compel production of the records, ordering Strong to: (1) produce a privilege log covering all documents in the possession of Strong or his attorney that were withheld from discovery in response to the State's requests for production; (2) produce to the State all records from the Social Security Administration in the possession of Strong or his counsel; and (3) acquire and produce any remaining portions of his Social Security Administration file related to his claim for disability benefits or execute a consent form entitling the State to obtain the records directly from the Social Security Administration. CP at 497-98.
Strong seeks review by this Court of whether (1) his Social Security records are protected from disclosure by the agency; (2) the Social Security records in his attorney's possession are protected by the work product doctrine and RPC 1.6(a); and (3) his Social Security records are discoverable under chapter 71.09 RCW and CR 26.
As part of the supplemental record, the State submitted a letter from the Social Security Administration which states that agency personnel "have been unable to locate any medical records pertaining to Mr. Strong." *606 The Court of Appeals correctly found that the issue of obtaining Strong's records from the agency is moot.
Strong argues that his Social Security records are protected from disclosure by the work product doctrine and by RPC 1.6, which prevents an attorney from revealing "confidences or secrets relating to representation of a client." RPC 1.6(a). For the work product doctrine to apply, a document must have been "prepared in anticipation of litigation." CR 26(b)(4). In the matter before us, the Social Security Administration prepared the records in order to evaluate Strong's claim for disability benefits, not in anticipation of litigation. Because Strong gave his attorney access to the Social Security records with the understanding that only the attorney would view them, he contends that RPC 1.6 applies. However, Strong cannot create a privilege simply by giving the records to his attorney. Strong has cited no authority in support of his position, and the Court of Appeals correctly held that the trial court did not abuse its discretion in refusing to apply the work product doctrine or RPC 1.6.
In addition, Strong argues that the State failed to demonstrate that the Social Security records were relevant under CR 26. Generally, CR 26 defines the scope of discovery as follows:
Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party .... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
CR 26(b)(1). The trial court did not abuse its discretion in considering the disability claim regarding pedophilia relevant for discovery purposes where a mental abnormality or personality disorder is at issue.
Finally, Strong asserts that the Social Security records are not discoverable because the State cannot obtain discovery beyond that specifically authorized under chapter 71.09 RCW "special proceedings." This argument fails because, unlike CR 35, which is inconsistent with the statute's express provisions, there is no inconsistency that precludes discovery of the records under the Civil Rules.

CONCLUSION
CR 35 is inconsistent with the special proceedings set out in chapter 71.09 RCW. Therefore, the State may not obtain CR 35 mental examinations of persons who have not yet been committed as sexually violent predators.
The trial court's order to quash the video deposition of Williams is reversed. The trial court's ruling that there is no privilege preventing the State from discovering Strong's Social Security records in the possession of his attorney is affirmed. The cases are remanded to the trial court for further proceedings consistent with this opinion.
ALEXANDER, C.J., SMITH, JOHNSON, MADSEN, SANDERS, OWENS, JJ., and GROSSE, J.Pro Tem., concur.
CHAMBERS, J., (concurring).
I concur with the majority's well reasoned opinion on all points. The State is not entitled to a CR 35[1] exam during a chapter 71.09 RCW civil commitment proceeding, and must instead be satisfied with the examinations authorized by the statute. Given my grave concern at its application in the courts below, I write separately, as Justice William O. Douglas once did, to comment on CR 35 exams during discovery generally.
CR 35 empowers a court to order an exam of a party whose physical or mental condition is in controversy, upon a showing of good cause, and after consideration of whether *607 alternative, less intrusive, and burdensome methods of acquiring the information, exists. The seminal case articulating the federal CR 35 "good cause" and "in controversy" requirements is Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). Schlagenhauf is the only case in which the United States Supreme Court has considered the significant constitutional issues attendant to such examinations. In light of Schlagenhauf and the deeper principles it rests upon, I strongly disagree with the one of the holding below (properly overruled by the majority on other grounds) that the "good cause" requirement is satisfied merely "when the State can show that the RCW 71.09.040(4) examination is insufficient." In re Det. of Williams, 106 Wash.App. 85, 97, 22 P.3d 283 (2001). "Good cause" must require more than that. This Court of Appeals' holding cannot be squared with the United States Supreme Court's interpretation of the parallel federal rule, or the plain language of our own CR 35.
In Schlagenhauf, the Supreme Court overturned a district court order directing that a defendant be examined by nine separate physicians. Strikingly, the Supreme Court took this action despite the fact that in large part, the question was moot. First, the Supreme Court explicitly rejected the argument that a party waives the constitutional right of privacy merely because litigation exists. Privacy is especially cherished and protected under Washington State law. See e.g., Reid v. Pierce County, 136 Wash.2d 195, 961 P.2d 333 (1998) (finding actionable the disclosure of autopsy photos). Further, a required waiver of one constitutional right as a condition of exercising the right of access to the courts might, in itself, run afoul the constitution. Schlagenhauf, 379 U.S. at 114, 85 S.Ct. 234; see also In re Pers. Restraint of Addleman, 139 Wash.2d 751, 991 P.2d 1123 (2000) (inmate may not be denied parole based in any part upon filing actions against the indeterminate sentencing review board of department of corrections).
Next, the Supreme Court took pains to establish that CR 35 requires some actual need, shown affirmatively by the movant, before an exam may be ordered. Schlagenhauf, 379 U.S. at 118, 85 S.Ct. 234. The movant must show that there is not some other (preferably less invasive and disruptive) way to acquire the desired information. Schlagenhauf, 379 U.S. at 119, 85 S.Ct. 234. Conclusory allegations are not sufficient to show either good cause or controversy. Schlagenhauf, 379 U.S. at 120, 85 S.Ct. 234. The trial judge is obligated to "delineate the `conditions, and scope' of the examinations." Schlagenhauf, 379 U.S. at 121 n. 16, 85 S.Ct. 234 (quoting Fed. R. Civ.P. 35). Since the trial judge had entered the order without adhering to these standards, the Supreme Court vacated the CR 35 order and remanded.
While concurring with much of the law articulated by the majority, Justice Douglas would have denied remand, and simply vacated the original discovery order as a matter of law. His admonition should not be forgotten:
I do not suppose there is any ... who does not suffer from some ailment, whether it be ulcers, bad eyesight, abnormal blood pressure, deafness, liver malfunction, bursitis, rheumatism, or what not. If he or she is turned over to the plaintiff's doctors and psychoanalysts to discover the cause of the mishap, the door will be opened for grave miscarriages of justice. When the defendant's doctors examine plaintiff, they are normally interested only in answering a single question: did plaintiff in fact sustain the specific injuries claimed? But plaintiff's doctors will naturally be inclined to go on a fishing expedition in search of anything which will tend to prove that the defendant was unfit to perform the acts which resulted in the plaintiff's injury. And a doctor for a fee can easily discovery something wrong with any patienta condition that in prejudiced medical eyes might have caused the accident. Once defendants are turned over to medical or psychiatric clinics for an analysis of their physical well-being and the condition of their psyche, the effective trial will be held there and not before the jury. There are no lawyers in those clinics to stop the doctor from probing this organ or that one, to halt a further inquiry, to object to a line of questioning. And there is no judge to sit as arbiter. The doctor or the psychiatrist has a holiday in the privacy of *608 his office. The defendant is at the doctor's (or psychiatrist's) mercy; and his report may either overawe or confuse the jury and prevent a fair trial.
Schlagenhauf, 379 U.S. at 125, 85 S.Ct. 234 (Douglas, J., dissenting in part). We should heed Justice Douglas's wise words when determining whether the movant has established good cause, controversy, lack of alternative methods to acquire the needed information, and appropriate scope.
Aside from the constitutional concerns, an examination by an expert hired by the opposition is rarely a desirable experience. Examinations can be financially, physically, and emotionally demanding. Parties are often required to take considerable time away from work or other activities, to travel inconvenient distances to the expert's office, and to wait significant amounts of time to be subjected to questions and questionnaires posed by experts suspicious of their answers and motives. Examinations often involve unwanted touching, poking, and twisting, causing discomfort and indignity. All done pursuant to a written order of a judge vested with the authority of the State. Such extreme exercise of judicial power should only happen upon a most stringent showing of necessity.
Washington's Civil Rule 35 provides in pertinent part:
When the mental or physical condition ... of a party ... is in controversy, the court... may order the party to submit to a physical examination by a physician, or mental examination by a physician or psychologist..... The order may be made only on motion for good cause shown ... and shall specify the ... scope....
Former CR 35(a)(1993). The rule provides for "a" examination; the rule does not provide for infinite exams. In an appropriate case, good cause might be shown for more than one examination. However, subjecting a party to more than one episode of poking, prodding, and invasion of physical and mental privacy should be the rare exception. If multiple experts are needed, great efforts should be taken to consolidate the exams. One examination does not mean one expert; our rule clearly contemplates multiple examiners at an exam. Former CR 35(a). Frequently, one examiner can perform all of the tests necessary and lay a foundation for multiple experts. It is not "good cause" to subject a party to multiple examinations because the opposition picked the wrong examiner the first time, or because scheduling several experts to be in one place will be tricky or inconvenient for the movant's experts. Inability to coordinate the calendars of experts is not "good cause" for more than one exam. It is not "good cause" that a party desires multiple expert witnesses who have each actually bent and twisted a party's limbs. Medical science has established standards, such as range of motion in degrees, which may be recorded by one examiner and interpreted by others. Similarly, mental disorders can be measured by standardized psychometric testing with objective scores.[2] Different experts may interpret the data differently. Further, the court should freely order that the exam be recorded by video tape which can be viewed by several experts. See former CR 35(a). Of course, psychometric testing is generally not diagnostic and must be correlated with clinical findings. Still, a party's desire to present multiple expert witnesses in multiple specialties to testify on an issue is not "good cause." Also, the mere mental status of a party does not justify separate examinations by a psychologist, a psychiatrist, a neurophysiologist and a neurologist.
I make these comments because it is clear from the record in the cases before us that the State, and many courts below, believe the State is entitled to multiple examinations under CR 35. Multiple CR 35 exams are generally an abuse by the judge, not the moving party. Read properly, the rule, the underlying principles, and the common law establish that if the trial judge properly applies CR 35; (1) to require a showing of good cause, (2) to *609 require a showing that there is no less intrusive and burdensome method to obtain the information desired, and (3) to properly delineate the condition and scope of the CR 35 exam, additional examinations would be allowed in only the most rare and exceptional of circumstances.
I concur with the majority on all points of law, and in result.
NOTES
[1] CR 35 was amended September 1, 2001; therefore, former CR 35 (1993) is the applicable rule in this matter.
[2] "`Sexually violent predator' means any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." Former RCW 71.09.020(1).
[3] The Court of Appeals states that good cause for an additional examination exists when the State can show that the statutory examination is insufficient and that "[t]his may occur where the mandatory examination was performed by a psychologist who lacks expertise in evaluating sex predators." Williams, 106 Wash.App. at 97, 22 P.3d 283. It is important to note that RCW 71.09.040 mandates that the evaluation "be conducted by a person deemed to be professionally qualified to conduct such an examination."
[4] Williams, Strong, and McCuistion also cite Sporich v. Superior Court of Ventura County, 77 Cal.App.4th 422, 91 Cal.Rptr.2d 752 (2000) for the proposition that no additional discovery is allowed in chapter 71.09 RCW cases. As the Court of Appeals states, the Petitioners' reliance on the California case is misplaced. Civil procedure in California is defined primarily by statute, rather than by court rule as in Washington.
[1] CR 35 was amended September 1, 2001; therefore, former CR (1993) is the applicable rule in this matter.
[2] I recognize that the standards in some professions require independent examinations. However a party wishing to bring multiple experts to bear must establish good cause for each subsequent exam, which should include good cause for why the information could not have been garnered in an earlier exam. I find myself skeptical there would often be good cause to subject a party to a physical or mental exam twice.