[No. 39785-4-II.   Division Two.   August 9, 2011.]

*In the Matter of the Detention of* THOMAS PAUL WILLIAMS,
*Appellant.*

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant.

*Robert M. McKenna, Attorney General,* and *Kristie Barham, Assistant,* for respondent.

¶1 HUNT, J. — Thomas Paul Williams appeals his involuntary commitment based on a jury's finding him to be a sexually violent predator (SVP). He argues that his court-ordered pretrial mental health exam unconstitutionally

invaded his privacy, exceeded the trial court's statutory authority, and prejudiced him. He also argues that the trial court violated his due process rights by (1) failing to distinguish a mentally ill sex offender from the ordinary criminal; (2) applying an invalid diagnosis, which the medical profession does not accept and which the *Diagnostic and Statistical Manual of Mental Disorders* (4th rev. ed. 2000) (DSM) does not contain; and (3) failing to instruct the jury to issue a special verdict specifying the mental disorder on which it relied. We affirm.

## FACTS

¶2 Thomas Paul Williams has two prior convictions for "sexually violent offense[s]" under RCW 71.09.020(17)—second degree rape and second degree child molestation, and additional prior convictions for communicating with a minor for immoral purposes and fourth degree assault.

### I. SVP Petition; Court-Ordered Exams

¶3 While Williams was serving his sentence for his latest conviction, the State filed a sexually violent predator petition seeking his involuntary civil commitment as a sexually violent predator under chapter 71.09 RCW. The trial court found probable cause to believe Williams is an SVP and ordered him held for an evaluation under RCW 71.09-.040(4). The State filed a CR 35 motion asking the trial court to order Williams to submit to a mental examination by the State's expert, Dr. Richard Packard.[1] Williams opposed this mental examination. After hearing argument from counsel, the trial court found good cause and ordered Williams to undergo a mental examination. Williams submitted to this examination in June 2002.

---

[1] The State based this motion, in part, on Dr. Packard's declaration outlining the importance of the examination in order to assess Williams' current mental condition and risk.

¶4 Several months after the trial court ordered this examination, the Washington Supreme Court issued *In re Det. of Williams*,[2] in which it held that, based on the rules of statutory construction, (1) "the State is not entitled to a CR 35 mental examination of an individual for whom the State seeks commitment as a sexually violent predator," and (2) before SVP commitment, the State's expert's mental examination of the alleged predator is limited to the RCW 71.09.040(4) evaluation. *In re Det. of Williams*, 147 Wn.2d 476, 479, 491, 55 P.3d 597 (2002). Based on this ruling, the trial court subsequently suppressed Dr. Packard's completed June 2002 mental evaluation of Williams, which it had ordered under CR 35. Over the next several years, the trial court granted Williams' multiple requests for continuances.[3]

¶5 In April 2009, the State moved to compel Williams to participate in a current psychological evaluation under RCW 71.09.040(4). Williams opposed this motion, arguing it was untimely and asserted no new authority. The State argued that the case had been pending for more than seven years and that the issue for the pending SVP trial was Williams' *current* mental condition. After considering counsels' briefing and argument, the trial court ordered Williams to "submit to an examination by Dr. Richard Packard" to "consist of a clinical interview and psychological testing as deemed appropriate by Dr. Packard." Clerk's Papers (CP) at 212. Williams submitted to interviews with Dr. Packard on June 10 and 11, 2009. Dr. Packard conducted psychological testing and reviewed extensive official records involving Williams' history, including police reports, victim state-

---

[2] The Williams in *In re Detention of Williams* was Eddie Leon Williams, not appellant here, Thomas Paul Williams.

[3] Williams recited several reasons for requesting continuances: his dissatisfaction with and rejection of experts appointed on his behalf; his refusal to cooperate with the State's expert; his failure to disclose witnesses timely; his refusal to work with his attorney, resulting in the appointment of different counsel; and pending resolution of new child pornography charges against him in Pierce County in 2005.

ments, treatment records, court records, prison records, and psychological evaluations.

## II. SVP Civil Commitment Trial

¶6 Williams' SVP jury trial commenced on August 31, 2009.

### A. Expert Testimony

#### 1. State's Expert, Dr. Richard Lynn Packard

¶7 The State called Dr. Packard, a licensed psychologist and certified sex offender treatment provider, who had evaluated Williams two months earlier (June 2009) to determine whether Williams met the SVP statutory criteria. Williams objected to "any testimony from Dr. Packard which is drawn from [that] compelled [2009] interview of Mr. Williams."[4] IV Verbatim Report of Proceedings (VRP) (Sept. 3, 2009) at 111.

¶8 Dr. Packard diagnosed Williams with two mental abnormalities: paraphilia,[5] not otherwise specified (NOS), nonconsent;[6] and nonexclusive type pedophilia, sexually aroused to females. He also diagnosed Williams with personality disorder NOS with narcissistic and antisocial features and alcohol dependence. Williams did not object to these diagnoses. Dr. Packard concluded that because these psychological issues cause Williams serious difficulty controlling his behavior, Williams is likely to engage in predatory acts of sexual violence in the future if not confined in

---

[4] Dr. Packard did not testify about information gleaned from the suppressed 2002 interview compelled under CR 35.

[5] A "paraphilia" is a disorder of sexual arousal or sexual interest. The DSM lists only seven specific paraphilias; but hundreds of different paraphilias exist. The DSM categorizes paraphilias that are not specifically listed as "Not Otherwise Specified." IV VRP at 133.

[6] The diagnosis of paraphilia NOS (nonconsent) is also referred to in the literature as paraphilia NOS (rape).

a secure facility. In explaining Williams' various mental disorders, Dr. Packard further explained that the DSM[7] explicitly lists the criteria for a finding of paraphilia. First, the person must show evidence of recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving objects, the suffering or humiliation of others, or children or other nonconsenting persons. Second, the urge or behavior must occur over at least a six-month period. Third, the person must suffer clinically significant distress or impairment in social, occupational, or other important areas of functioning as a result of the urge or behavior. Thus, a paraphilia involves abnormal arousal that continues over time and has a cost associated with it. Williams' diagnosis involves arousal to nonconsenting persons, otherwise known as "[p]araphilia [NOS], [n]on-consent," based on a variety of Williams' sexual behaviors with nonconsenting persons occurring over the years. IV VRP at 135. In Dr. Packard's opinion, Williams met all of the DSM criteria for paraphilia NOS, nonconsent.

¶9 Dr. Packard also testified about Williams' various other diagnoses, including pedophilia, personality disorder, NOS with antisocial and narcissistic features, and alcohol dependence. The evidence supporting Williams' pedophilia diagnosis included: his sexual assault of a 12-year-old prepubescent girl; his sketching his 11-year-old niece in the nude; his pulling up the shirt of an 11-year-old girl to expose her breasts; and his possessing child pornography as recently as 2004. Stressing the importance of considering the interaction of all of these diagnoses on Williams, Dr. Packard explained,

[P]eople aren't boxes. So as I explain this, try to understand that these things all work together. It's not like there's a piece in a person that has this. And it's totally independent and

---

[7] Dr. Packard based his diagnoses on the current version of the DSM, a manual of psychological disorders. Dr. Packard described the DSM as not a "science" but, rather, an attempt periodically to represent some commonly held beliefs. V VRP at 306.

separate from everything else. It's part of a combination, a part of a unity.

IV VRP at 128. It's the combination of these mental abnormalities that predisposes Williams to cause harm.

¶10 Evidence that Williams' mental abnormality continues despite criminal confinement included: Williams' attempts in prison to obtain photographs of other inmates' children; passing letters and drawings to a 13-year-old girl visiting her imprisoned father; and possession of child pornography while at the Special Commitment Center (SCC) for SVPs. According to Dr. Packard, Williams' mental disorders make him likely to engage in predatory acts of sexual violence if not confined in a secure facility.

### 2. Williams' Expert, Dr. Theodore A. Donaldson

¶11 Williams called as his expert Dr. Theodore A. Donaldson, who based his testimony on a review of the records and a two-hour interview with Williams from 2004 (five years before the SVP hearing in 2009). Dr. Donaldson disagreed with Dr. Packard's diagnosis of Williams as paraphilia NOS, nonconsent because Williams' rape conviction constituted "the only single instance we have where he raped anybody." VII VRP at 659. Dr. Donaldson explained the "controversi[es] in the literature" about various paraphilia diagnoses, especially those labeled "non-consent." VI VRP at 531-32. In Dr. Donaldson's opinion, there was "insufficient evidence" for either the diagnosis of paraphilia NOS, nonconsent or the diagnosis of pedophilia. VI VRP at 545.

¶12 Discussing Williams' "violent rape" conviction, Dr. Donaldson opined that it had "more of the earmarks of an anger rapist" than of someone aroused by nonconsent and testified that his diagnosis of Williams was "dumb behavior." VI VRP at 532, 544. But Dr. Donaldson generally considered "possession of child pornography to be, especially when they're incarcerated, to be an indication that

the person does have a specific arousal to children." VI VRP at 539. He described Williams as an "opportunistic child molester," whose nonconsensual sexual activity with children was "stupid horseplay." VI VRP at 544-45.

¶13 Although Dr. Donaldson did not believe that a personality disorder makes a person commit sex offenses, he agreed with Dr. Packard's personality disorder diagnosis for Williams, focusing more, however, on Williams' prominent narcissism. Dr. Donaldson believed that Williams has a "very wide-range preference" in sexual activity and described it as "eclectic." VII VRP at 631. And Dr. Donaldson agreed with Dr. Packard that Williams "definitely" has substance abuse problems. VII VRP at 626.

## B. Verdict

¶14 The jury found Williams to be an SVP. The trial court ordered Williams committed to the custody of the Department of Social and Health Services (DSHS) "until such time as his mental abnormality and/or personality disorder has so changed that [Williams] is safe to be conditionally released to a less restrictive alternative or unconditionally discharged." CP at 475. Williams appeals.

## ANALYSIS

### SEX OFFENDER'S PRIVACY RIGHTS; COURT-ORDERED MENTAL EXAMINATIONS

¶15 Williams argues that when the trial court ordered his pretrial mental health examination, it unconstitutionally invaded his privacy, exceeded its authority under RCW 71.09.040, and thereby committed prejudicial error. We disagree.

¶16 At issue here is the trial court's interpretation of chapter 71.09 RCW. Where statutory language is plain and unambiguous, we derive the statute's meaning from the wording of the statute itself. *Rozner v. City of Bellevue*, 116

Wn.2d 342, 347, 804 P.2d 24 (1991). A trial court's interpretation of a statute is a question of law, which we review de novo. *Williams*, 147 Wn.2d at 486 (citing *W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 607, 998 P.2d 884 (2000)). We also review questions involving allegations of constitutional violations de novo. *In re Det. of Strand*, 167 Wn.2d 180, 186, 217 P.3d 1159 (2009).

## A. Privacy Rights

¶17 Williams argues that the court-ordered mental health examination under RCW 71.09.040 violated his constitutional right to privacy. The State responds that in Washington, sex offenders have reduced privacy interests because they threaten public safety. The State is correct.

¶18 Washington " 'clearly recognizes an individual's right to privacy with no express limitations' and places greater emphasis on privacy" than do federal constitutional provisions. *State v. Ladson*, 138 Wn.2d 343, 348-49, 979 P.2d 833 (1999) (internal quotation marks omitted) (quoting *State v. Young*, 123 Wn.2d 173, 180, 867 P.2d 593 (1994)). Nevertheless, the privacy that Washington's article I, section 7 protects is not absolute, and the State "may reasonably regulate this right [in order] to safeguard society." *State v. Meacham*, 93 Wn.2d 735, 738, 612 P.2d 795 (1980) (citing *Whalen v. Roe*, 429 U.S. 589, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977)). Washington case law specifically recognizes the reduced privacy interests of sex offenders because they threaten public safety. *In re Det. of Campbell*, 139 Wn.2d 341, 355-56, 986 P.2d 771 (1999). Thus, "substantial public safety interest outweighs the truncated privacy interests of the convicted sex offender." *Campbell*, 139 Wn.2d at 356. We hold, therefore, that the court-ordered examination did not improperly infringe on Williams' constitutional right to privacy.

## B. Mental Health Examinations under RCW 71.09.040(4)

¶19 Next, Williams argues that case law interpretation of RCW 71.09.040(4) bars court-ordered pretrial men-

tal health examinations and instead authorizes only a records review. The State responds that (1) contrary to Williams' argument, the statute *requires* a full mental examination *after* the court finds probable cause; and (2) this interpretation and application of the statute finds further support in the administrative rule promulgated to effectuate RCW 71.09.040(4). Again, we agree with the State.

¶20 RCW 71.09.040(4) provides:

> If the probable cause determination is made, the judge shall direct that the person be transferred to an appropriate facility for an evaluation as to whether the person is a sexually violent predator. The evaluation shall be conducted by a person deemed to be professionally qualified to conduct such an examination *pursuant to rules developed by the department of social and health services. In adopting such rules, the department of social and health services* shall consult with the department of health and the department of corrections. In no event shall the person be released from confinement prior to trial. A witness called by either party shall be permitted to testify by telephone.

(Emphasis added.) As directed and authorized by this statute, DSHS promulgated rules to implement these court-ordered evaluations for sex offenders. *See* ch. 388-880 WAC.

¶21 Williams argues that the Washington Supreme Court in *Williams* "implicitly held" that RCW 71.09.040(4) authorizes only a records review because the records review was the only examination remaining after the trial court suppressed the 2002 evaluation it had ordered under CR 35, following the *Williams* holding. Br. of Appellant at 9 (citing *Williams*, 147 Wn.2d 476). Williams misconstrues both the statute's plain language and the *Williams* holding. First, the plain language of RCW 71.09.040(4) provides authority for a comprehensive mental evaluation of the offender to determine if he is an SVP once the trial court

has found probable cause.[8] Second, the issue in *Williams* focused on whether the State in an SVP proceeding could compel a mental health examination under CR 35;[9] the court held that "the State is not entitled to a CR 35 mental examination of an individual for whom the State seeks commitment as a sexually violent predator." *Williams*, 147 Wn.2d at 479.

¶22 The *Williams* court did not limit the mental examination to a records review; on the contrary, it limited the State's mental examination of a person not yet determined to be an SVP to the evaluation required under RCW 71.09.040(4). *Williams*, 147 Wn.2d at 491. A few years later, the Supreme Court emphasized its narrow holding in *Williams* when it stated in *Audett*:

> [In *Williams*] we did not preclude the use of CR 35 exams out of due process concerns. Rather, *we merely held that RCW 71.09.040 provides the exclusive means for obtaining mental examinations of civil commitment respondents.* We have never held that sexually violent predator civil commitment respondents have a due process right to refuse to submit to an examination of the type described in CR 35 or that such respondents have a Fifth Amendment right against self-incrimination. *In fact, RCW 71.09.040(4) specifically provides that such respondents must submit to an evaluation after a court determines that there is probable cause to believe they are sexually violent predators*, and RCW 71.09.070 provides that they must submit to subsequent examinations annually after having been committed.

*In re Det. of Audett*, 158 Wn.2d 712, 726-27, 147 P.3d 982 (2006) (emphasis added) (citations omitted).

¶23 The rules that the DSHS developed to implement RCW 71.09.040(4) include that, in preparation for a trial or hearing, the evaluation of an SVP must be based on an

---

[8] We confirmed during oral argument that Williams does not contest the trial court's finding of probable cause.

[9] 147 Wn.2d at 489.

"[e]xamination of the resident, including a forensic interview and a medical examination, if necessary." Former WAC 388-880-034(1) (2003).[10] DSHS's rules also provide:

> If the person refuses to participate in examinations, forensic interviews, psychological testing or any other interviews necessary to conduct the initial evaluation under [former] WAC 388-880-030(1), the evaluator must notify the SCC. The SCC will notify the prosecuting agency for potential court enforcement.

Former WAC 388-880-035 (2008). We hold that the trial court appropriately followed both the authorizing statute and implementing rules when it ordered Williams' mental health examination after finding probable cause to believe that he met the criteria for an SVP. RCW 71.09.040(4).

¶24 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PENOYAR, C.J., and WORSWICK, J., concur.

---

[10] This text represents the version of WAC 388-880-034 in effect at the time of Williams' trial. DSHS's recent amendments of WAC 388-880-034 are not relevant to this appeal.