[No. 37886-4-I. Division One. June 15, 1998.]

*In the Matter of the Detention of* MARK F. BROER.

MARK F. BROER, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.

*Jeffrey E. Ellis, Robert C. Boruchowitz,* and *David B. Hirsch* of *The Defender Association,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Sarah B. Sappington, Assistant,* for respondent.

Cox, J. — Generally, a court order may not be collaterally attacked in contempt proceedings arising from violation of that order. This rule is subject to narrow exceptions that are not present in this proceeding. We hold that the trial court did not abuse its discretion by ordering a mental examination, subject to the constitutional protections specified in the order. Likewise, it did not abuse its discretion by imposing a contempt order for the appellant's refusal to be examined. Accordingly, we affirm.

In October 1994, several days prior to Mark Broer's scheduled release from prison, the State commenced this civil commitment proceeding under the sexually violent predator act[1] in Whitman County, Washington. Broer had served the maximum prison terms for second degree rape and attempted first degree rape. In its petition, the State alleged that Broer is a sexually violent predator under the act based on his criminal history of sexual assaults against children and a mental abnormality or disorder predisposing him to commit acts of sexual violence. The State requested that Broer be committed to a secure DSHS facility for treatment until he is safe to be at large. Notwithstanding the holding in *In re Personal Restraint of Young*,[2] the State's petition failed to address the propriety of less restrictive alternatives to treatment than detention.

In its certification for determination of probable cause that accompanied the petition, the State set forth a more extensive criminal history of Broer's sexual assaults against children. The certification also described clinical assess-

---

[1] RCW 71.09.010-.902.

[2] 122 Wn.2d 1, 47, 857 P.2d 989 (1993).

ments of Broer by three psychologists, one of whom opined that Broer meets the statutory definition of a sexually violent predator under RCW 71.09.020(1). Based on the petition and the State's certification, a commissioner of the Whitman County Superior Court issued an ex parte order directing that Broer be detained and a probable cause hearing be held within 72 hours. At the probable cause hearing, a superior court judge heard argument, considered the submissions of the parties, and determined that probable cause to believe that Broer is a sexually violent predator existed under the act.[3] He then entered an order directing that Broer be transferred to DSHS' Special Commitment Center (SCC) in Monroe, Washington, for custodial detention and evaluation. The order further required Broer to answer any questions posed to him during a mental examination and evaluation, subject to Fifth Amendment protections that he need not reveal information that could serve as the basis for future prosecution. In November 1994, the superior court transferred venue of the proceeding to King County Superior Court.

In January 1995, Broer waived to April 10, 1995, his right to be tried within 45 days of the filing of the petition.[4] A series of motions followed.

The State requested that Broer be held in contempt for failing to comply with the prior order that he participate in a mental examination for the purpose of evaluation under the act. The trial court reserved ruling on contempt pending completion of discovery and continued the hearing for one month.

Broer then moved to dismiss the petition on multiple grounds. The trial court denied the motion but ordered the State to amend its petition to include an allegation regarding the propriety of less restrictive alternatives to treatment than detention. After a new probable cause hearing, the court entered a new order directing that Broer submit

---

[3] RCW 71.09.040.

[4] RCW 71.09.050(1).

to a mental examination. Following a series of hearings, the trial court ruled that Broer had violated the order for examination and struck the scheduled trial date until such time as Broer complies with that order.

Broer filed a notice of appeal seeking review of four orders. A commissioner of this court ruled that the contempt order was appealable as a matter of right, but that certain other orders were neither presently appealable nor subject to discretionary review. Neither party sought modification of the commissioner's ruling.

## I. Scope of Review

■ We first consider what rulings are now before us for consideration. Broer sought review of four orders. But the court commissioner's ruling narrowed our present review to the contempt order and the order directing the mental examination. If an aggrieved party fails to seek modification of a commissioner's ruling within the time permitted by RAP 17.7, the ruling becomes a final decision of this court.[5] Because neither party sought review of the commissioner's ruling regarding the scope of review, we confine ourselves to reviewing only the order directing the mental examination and the contempt order

## II. Collateral Bar Rule

Broer challenges on jurisdictional grounds the order directing him to submit to a mental examination. He essentially contends that the order is void for a variety of reasons. The order is not void, and we hold that the trial court did not abuse its discretion in directing the examination that is required by statute.[6]

---

[5]*Kramer v. J.I. Case Mfg. Co.*, 62 Wn. App. 544, 547, 815 P.2d 798 (1991); *Gould v. Mutual Life Ins. Co.*, 37 Wn. App. 756, 758, 683 P.2d 207 (1984).

[6]RCW 71.09.040(4) provides in relevant part that "[i]f the probable cause determination is made, the judge shall direct that the person be transferred to an appropriate facility for an evaluation as to whether the person is a sexually violent predator. The evaluation shall be conducted by a person deemed to be profes-

■ Generally, under the collateral bar rule, " 'a court order cannot be collaterally attacked in contempt proceedings arising from its violation, since a contempt judgment will normally stand even if the order violated was erroneous or was later ruled invalid.' "[7] But there are some situations where the collateral bar rule does not apply. First, we may reverse a contempt order if the underlying order that it attempts to enforce was entered by a court that did not have inherent authority, or "jurisdiction," to do so.[8] In *Marley v. Department of Labor & Industries*,[9] our Supreme Court explained that there is an important distinction between an order that is void because the court has no jurisdiction and one that is merely erroneous. An order is void when the court does not have jurisdiction over both the person and subject matter of the claim. A court lacks subject matter jurisdiction when it attempts to decide a type of controversy that it has no authority to adjudicate.[10] It does not lose such jurisdiction by interpreting the law erroneously.[11]

As our Supreme Court has also stated:

The "jurisdiction" test measures whether a court, in issuing an order or holding in contempt those who defy it, was performing the sort of function for which judicial power was vested in it. If, but only if, it was not, its process is not entitled to the respect due that of a lawful judicial body.

. . . It must appear that the document which forbade the

---

sionally qualified to conduct such an examination pursuant to rules developed by the department of social and health services."

[7]*In re J.R.H.*, 83 Wn. App. 613, 616, 922 P.2d 206 (1996) (quoting *State v. Coe*, 101 Wn.2d 364, 369-70, 679 P.2d 353 (1984)).

[8]*Mead Sch. Dist. No. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 278, 282, 534 P.2d 561 (1975).

[9]125 Wn.2d 533, 886 P.2d 189 (1994).

[10]*Marley*, 125 Wn.2d at 539.

[11]*Id.* at 539 (quoting *In re Marriage of Major*, 71 Wn. App. 531, 534-35, 859 P.2d 1262 (1993)).

acts the contemnors committed was only a writing by a judge, not the lawful process of a court.[12]

Contempt orders enforcing unconstitutional prior restraints fall within this category of void orders.[13] Likewise, an order compelling the disclosure of materials protected by the attorney-client privilege is void.[14]

We must decide whether the order directing the mental examination is void because the court lacked jurisdiction to enter it. The underpinnings of Broer's challenge rest on two aspects of the State's original petition under the act. First, the State failed to include any allegations respecting the propriety of less restrictive alternatives for treatment than detention. Second, the petition did not contain the signatures of two mental health professionals.

■ Since *Young*, there can be no serious doubt that the constitutional guaranty to equal protection requires the State in this type of proceeding to comply with the requirement that it consider treatment alternatives less restrictive than detention.[15] This is so because our Supreme Court has said that not all sex predators present the same level of danger, and therefore they do not require identical treatment.[16] Thus, the State must comply with the provisions of RCW 71.05, the involuntary treatment act, to show that less restrictive alternatives than detention are not appropriate for treatment.[17]

As a consequence, we summarily reject the State's argu-

[12]*Mead*, 85 Wn.2d at 282.

[13]*Coe*, 101 Wn.2d 364.

[14]*Seattle N.W. Sec. Corp. v. SDG Holding Co.*, 61 Wn. App. 725, 812 P.2d 488 (1991); *Dike v. Dike*, 75 Wn.2d 1, 448 P.2d 490 (1968).

[15]122 Wn.2d at 45.

[16]*Young*, 122 Wn.2d at 47.

[17]*Id*. RCW 71.05.240 provides in relevant part that

[a]t the conclusion of the probable cause hearing, if the court finds by a preponderance of the evidence that such person, as the result of mental disorder, presents a likelihood of serious harm to others or himself or herself, or is gravely disabled, and, *after considering less restrictive alternatives to involun-*

ment here that it need not include in its petition consideration of the inappropriateness of less restrictive alternatives. First, this argument is contrary to the court's ruling below, a ruling the State did not cross-appeal. Second, the argument is directly at odds with *Young*. Finally, *In re Detention of J.S.*,[18] a case that the State cites in support of its argument, does nothing to undercut the ruling in *Young*. In the former case, our Supreme Court held that the courts are not constitutionally required to *adopt* less restrictive alternatives.[19] It did not hold that the constitution permits disregard of less restrictive treatment alternatives than confinement.

Broer faults the trial court for allowing the State to amend its petition to include the required allegations rather than dismissing the action. He asserts that the omission of consideration of less restrictive alternatives is a jurisdictional defect that makes the order directing the examination void.

■ Broer's argument confuses the distinction between a void order and one that may be only erroneous. There is no argument here that the court lacked personal jurisdiction over Broer or subject matter jurisdiction over this type of proceeding. The trial court clearly had "jurisdiction," as that term is described by the court in *Mead*, to enter the order for mental examination under RCW 71.09.040. This is so despite the original defective petition. The order in question was entered after the State amended its petition to include consideration of less restrictive alternatives, and the trial court made a new determination that probable cause existed after a contested hearing.

Broer's argument that the State's defective original petition relieved the court of its authority to hear the probable

tary detention and treatment, finds that no such alternatives are in the best interests of such person or others, the court shall order that such person be detained for involuntary treatment[.]

(Emphasis added.)

[18]124 Wn.2d 689, 880 P.2d 976 (1994).

[19]*J.S.*, 124 Wn.2d at 699.

cause proceeding is similar to the argument the court rejected in *Mead*. There, the appellant contended that the court lacked jurisdiction because the plaintiff had not obtained proper authorization for the underlying lawsuit. The court stated that

> [t]he district had the power to bring this sort of suit, and the trial court to hear it, but the district's lawyers had not legally been empowered to represent it in this case by any binding resolution of its board of directors. We cannot see how this should in any way diminish the respect due the order of the superior court. The defect was in the plaintiff, not the court.[20]

We likewise cannot see here how the original defective petition should diminish respect for the order directing the examination, which was entered after the amended petition. Although Broer contends the court lost jurisdiction in October 1994 due to the defective original petition, there is nothing before us to show that the original defect made void the later order for examination.

Broer next contends that *Young* and *In re Detention of Aqui*[21] require us to impose the remedy of dismissal because the original petition was defective. We disagree.

In those cases, the courts stated that the lack of the required allegations in the original petitions did not require dismissal. In *Young*, the court remanded the case for consideration of less restrictive alternatives after Young had already been tried. In *Aqui*, the court determined that the State's failure to address less restrictive alternatives was harmless error because Aqui had already been found to be a sexually violent predator.[22] Given the respective resolutions of these cases, we cannot conclude that the State's failure to make the proper allegations in its initial petition deprived the trial court of jurisdiction to issue the order for mental examination. Although this matter has

---

[20]*Mead*, 85 Wn.2d at 283.

[21]84 Wn. App. 88, 929 P.2d 436 (1996), *review denied*, 133 Wn.2d 1015 (1997).

[22]84 Wn. App. at 94.

not proceeded to the point of trial, it has proceeded through a probable cause hearing that included consideration of less restrictive alternatives. In our view, this procedure, even if erroneous, does not render the order for examination void.

Broer notes that the court in *Aqui* stated that the trial court should have dismissed the petition because the State failed to provide a probable cause hearing within 72 hours. He argues that the State's failure to include the necessary allegations here deprived the court of jurisdiction.

■ But the *Aqui* court did not hold that the trial court had no jurisdiction to consider the matter before it. Rather, it stated that the remedy of dismissal was not warranted because the error was harmless.

The same harmless error analysis applies here. The trial court here found at a contested hearing, after the petition was properly amended, that "there is probable cause to believe that Respondent cannot be treated in a facility less restrictive than the total confinement of the SCC." Thus, the court's consideration of the appropriateness of less restrictive alternatives did not affect the outcome of the probable cause hearing after the amendment.

Broer also cites *In re Cross*[23] to support his argument. That case is distinguishable. There, the State included the required allegation that the appellant failed to comply with her outpatient treatment. The court commissioner found that she had complied but nonetheless ordered her returned to inpatient treatment. Because the statute at issue required a showing that the patient failed to comply with a less restrictive treatment alternative before the court could revoke such an alternative, our Supreme Court indicated that the proper remedy was dismissal. Here, in contrast, the State showed, and the court concluded that less restrictive alternatives were not appropriate.

■ Broer also argues that the State's failure to obtain the signatures of two mental health professionals to sup-

port its petition deprived the court of jurisdiction. In making this argument, he appears to concede that RCW 71.09, the statute under which this proceeding was commenced, does not require such signatures.

As we have concluded earlier in this opinion, this argument does not make the order directing an examination void. To the contrary, it is clear that the trial court in this case had jurisdiction, according to *Mead*'s definition of that term, to issue the challenged examination order. We therefore cannot conclude that the absence of those signatures deprived the court of jurisdiction to order a mental examination.

■ We also note that although the petition itself did not contain the signatures of professionals as specified by RCW 71.05, the accompanying certification for determination of probable cause alleged that various professionals had examined Broer and that one expressly opined that Broer is a sexually violent predator under the act. Broer thus received notice of the facts that the State was using to support its petition against him.[24]

Broer further contends that the trial court's order violates his rights to privacy and equal protection. However, he makes no argument and cites no authority for the proposition that these constitutional violations render void the trial court's order. Under the collateral bar rule, we do not consider these arguments attacking the order directing Broer to submit to a mental evaluation. We therefore do not reach Broer's arguments on these issues.

### III. Contempt Order

■ We review a trial court's order holding a party in contempt for abuse of discretion.[25] There was no such abuse here.

---

[24]*See In re Detention of R.P.*, 89 Wn. App. 212, 216, 948 P.2d 856 (1997) (purpose of requiring affidavits by physicians in involuntary commitment proceedings is to provide notice to the patient of the facts the State is alleging in support of its petition).

[25]*Rekhi v. Olason*, 28 Wn. App. 751, 756-57, 626 P.2d 513 (1981).

 Broer first contends that the trial court erred by compelling a mental examination without a CR 35 showing of good cause. But under CR 81,[26] a statute applicable to a special proceeding supersedes civil rules that are inconsistent with the statute. In *In re Detention of Aguilar*,[27] Division Three of this court addressed the argument that the trial court's determination of probable cause under RCW 71.09 was invalid because good cause was not shown for the mental examination as required by CR 35. The court held that the statute superseded the inconsistent civil rule.[28]

We agree with the court in *Aguilar* that the proceedings specified in RCW 71.09 are special proceedings as that term is used in CR 81. RCW 71.09.040(4) states, in relevant part, that

> [i]f the probable cause determination is made, the judge shall direct that the person be transferred to an appropriate facility for an evaluation as to whether the person is a sexually violent predator. The evaluation shall be conducted by a person deemed to be professionally qualified to conduct such an examination pursuant to rules developed by the department of social and health services.

We conclude that the requirement of showing good cause in CR 35 is inconsistent with the statute's directive that upon a determination of probable cause, an examination shall be conducted. In short, the statute controls and there is no requirement for a CR 35 showing of good cause for a court to order a mental examination in this special proceeding.

 Broer next argues, on the basis of CR 37(b)(2)(D), that the trial court may not use contempt as a sanction for his failure to comply with an order to submit to a mental

---

[26]CR 81(a) provides, in relevant part, that "[e]xcept where inconsistent with rules or statutes applicable to special proceedings, these rules shall govern all civil proceedings."

[27]77 Wn. App. 596, 892 P.2d 1091 (1995).

[28]*Aguilar*, 77 Wn. App. at 600.

or physical examination.[29] We disagree with this argument because, as we have already noted, the Civil Rules do not govern this special proceeding. Thus, CR 37(b)(2)(D) does not act as a bar to the use here of the sanction of contempt.

While RCW 71.09.040 does not expressly address the court's power to enforce its order for a mental examination by holding the potential sexually violent predator in contempt, the court has the inherent power to punish for contempt.[30] Moreover, there is also statutory authority supporting the court's exercise of its power of contempt.[31]

RCW 7.21.010 defines contempt, in relevant part, as "(b) Disobedience of any lawful judgment, decree, order, or process of the court[.]" RCW 7.21.030(2)(a) provides that imprisonment is a permissible sanction for contempt resulting from disobedience of a court order. Thus, the trial court, in addition to its inherent contempt power, also had power to hold Broer in contempt under this statute.

Broer next argues that the trial court abused its discretion by sanctioning him for his failure to comply with its order requiring him to submit to evaluation because his failure was not willful and deliberate. We disagree.

We first note that Broer has cited no authority to support the application of the willful and deliberate requirement to either the court's inherent power to punish for contempt or the statutory power to impose this sanction. Rather, this requirement appears to be limited in its application to specific sanctions listed in CR 37. In fact, our Supreme Court has specifically held that courts may hold

---

[29]CR 37 (b)(2)(D) provides in part:

"If a party . . . fails to obey an order to provide or permit discovery, including an order made under . . . rule 35, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: . . .

"(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders *except an order to submit to physical or mental examination*[.]" (Emphasis added.)

[30]*Marley*, 125 Wn.2d at 540 (quoting *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 423, 63 P.2d 397 (1936)).

[31]*Marley*, 125 Wn.2d at 540 n.3.

parties in contempt under the general contempt statute with no showing of willfulness or deliberateness.[32]

The trial court here carefully set out conditions for the examination that specifically provided that Broer was not required to answer questions that would violate his Fifth Amendment protections against incrimination. It also provided that counsel for Broer could be present during the examination to assist Broer in asserting this right. It concluded that Broer had failed to take the examination without legal justification. There was no abuse of discretion.

Broer next contends that the trial court failed to balance the merits of his constitutional claims against the State's interest in obtaining a mental examination as the statute provides. But the cases that he cites for this proposition discuss balancing in the context of deciding whether the sanction of contempt in a particular case has ceased to serve the purpose of forcing compliance.[33] That is not the issue here, and the cases are therefore distinguishable.

Broer also suggests that the court should have chosen as an alternative to contempt a directive to the State to proceed on the basis of information about Broer that it already had. But the court was not required to accept such an alternative in view of the statute's specific requirement that a mental evaluation is required as part of the proceeding.

Finally, Broer argues that the trial court could not circumvent an alleged prohibition against the exercise of the contempt power by striking the trial date. But we have concluded that the court was exercising its power to hold Broer in contempt and that there is no prohibition here against the exercise of that power.

We affirm both the trial court's order directing the mental examination and the order holding Broer in contempt and striking the trial date.

---

[32]*Matthewson v. Primeau*, 64 Wn.2d 929, 934, 395 P.2d 183 (1964).

[33]*In re Personal Restraint of King*, 110 Wn.2d 793, 756 P.2d 1303 (1988); *State v. Miller*, 74 Wn. App. 334, 343, 873 P.2d 1197 (1994).

WEBSTER and BECKER, JJ., concur.

After modification, further reconsideration denied March 4, 1999.

Review denied at 138 Wn.2d 1014 (1999).