# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DEVON T. JAMES, a married man, | ) | No. 69513-4-I |
| | ) | (consolidated with No. 69992-0-I |
| Appellant, | ) | and No. 70011-1-I) |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| TERESA ANN WRIGHT and THOMAS | ) | UNPUBLISHED OPINION |
| LEE CARTWRIGHT, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | FILED: June 23, 2014 |

TRICKEY, J. — A court may relieve a party from a void judgment regardless of the passage of time. Because the superior court had subject matter jurisdiction over this dispute, the 2011 contempt order is not void.

Under the rules of appellate procedure, a party must file a notice of appeal within 30 days after the trial court enters its decision. RAP 5.2(a). Here, the appellant failed to timely appeal from a 2011 trial court order finding him in contempt of a 2009 permanent injunction, imposing certain restrictions and awarding attorney fees.

Although the appellant did timely appeal five subsequent orders, the only issue remaining before us is attorney fees. The trial court did not abuse its discretion in awarding the respondents attorney fees. Further, the respondents are entitled to attorney fees on appeal. We affirm.

## FACTS

The Frank and Nancy Friedman family (together Friedman) once owned property on the Puget Sound waterfront in south King County.[1] In the 1970s, Friedman subdivided the property into two adjacent parcels, one up the slope from the other. Friedman set the

---

[1] Clerk's Papers (CP) at 683.

boundary line between the properties so that it ran in a semi-circular fashion around the in-ground swimming pool on Friedman's property, far enough away to provide the pool with lateral support.[2]

Friedman retained the upper slope property until he sold it to Teresa Wright and Thomas Cartwright (collectively, Cartwright) in April 1999.[3] Devon James purchased the lower property and moved in December 2001. The slope in the center of the boundary line between the two properties is fairly steep.[4] Both of the parties and the court referred to the boundary as "the rockery."[5]

James objected to Cartwright constructing a beach shelter on Cartwright's portion of the waterfront.[6] James threatened to destroy Cartwright's view if Cartwright continued with his plans. James planted two varieties of fast-growing bamboo that can attain heights ranging from 20 to 35 feet in a year.[7] Additionally, the invasive bamboo grows rhizomes, which extend 18 inches horizontally from the base of bamboo, with each rhizome capable of producing 50 new culms of bamboo.[8] These rhizomes invaded Cartwright's property.[9] James installed poles and nettings to aid the growth and density of the bamboo plants.[10]

James initiated this action in 2007 when he sued Cartwright for adverse possession, mutual recognition and acquiescence, boundary location, prescriptive easement, extinguishment of written easement, and nuisance.[11] James did not prevail

---

[2] CP at 683-84, Finding of Fact (FF) 11 (2009 Permanent Injunction).
[3] CP at 683, FF 9.
[4] CP at 684, FF 12.
[5] CP at 684, FF 12.
[6] CP at 687, FF 25.
[7] CP at 687, FF 27, 28.
[8] CP at 687, FF 27.
[9] CP at 688, FF 29.
[10] CP at 688, FF 33.
[11] CP at 3-9.

on any of his claims.[12] On May 15, 2009, the trial court upheld Cartwright's counterclaims for violation of RCW 7.40.030 (spite fence statute), violation of RCW 4.24.510 (anti-SLAPP statute), nuisance, and issued a permanent injunction against James.[13]

The court further provided that if Cartwright alleged a violation of the injunction, and prevailed, Cartwright might be entitled to a judgment against James for reasonable attorney fees and costs.[14] James filed an appeal to this court, but subsequently voluntarily withdrew the appeal.[15]

In February 2011, Cartwright moved for contempt and an order clarifying and enforcing the 2009 permanent injunction, contending that the bamboo continued to encroach on the property.[16] The court found James in contempt on April 22, 2011, for failing to control the bamboo, for erecting structures to support the bamboo in violation of the 2009 order, and for destabilizing the rockery on the border between the properties. The court ordered James to comply, imposing sanctions for failure to do so and, further, ordered him to restore the rockery to its original condition.[17]

The trial court subsequently entered multiple orders to enforce the 2009 and 2011 orders. James appeals eight orders, including the 2011 order. He contends that the trial court was without jurisdiction to enter the 2011 order, that he was denied his right to a jury trial, and denied due process. James also argues that the trial court abused its discretion in awarding attorney fees and costs.

---

[12] After summary judgment orders, only the adverse possession, extinguishment of written easement, and nuisance remained. CP at 682, FF 4. The adverse possession claim was dismissed at the completion of James's case in chief. CP at 682, FF 5.

[13] CP at 695-99, 718-21.

[14] CP at 698, Conclusions of Law 27 (2009 Permanent Injunction).

[15] CP at 2564, 2571.

[16] CP at 728-40.

[17] CP at 1001-03.

ANALYSIS

Subject Matter Jurisdiction

Subject matter jurisdiction is a question of law reviewed de novo. A judgment is void if the entering court lacked subject matter jurisdiction. In re Marriage of Buecking, 179 Wn.2d 438, 446, 316 P.3d 999 (2013); Cole v. Harveyland, LLC, 163 Wn. App. 199, 205, 258 P.3d 70 (2011). A court may relieve a party from a void judgment regardless of the passage of time. CR 60(b)(5). "Subject matter jurisdiction refers to a court's ability to entertain a type of case, not to its authority to enter an order in a particular case." Buecking, 179 Wn.2d at 448.

Superior courts in Washington State have subject matter jurisdiction over all types of cases unless jurisdiction is vested exclusively in another court. WASH. CONST. art. IV, § 6. The subject matter at issue involved the possession of real property. James invoked the court's jurisdiction when he filed a motion to quiet title, damages for nuisance, and malicious prosecution. Cartwright filed a counterclaim contending that the bamboo plantings constituted a "spite" structure in violation of RCW 7.40.030.[18] The court exercised its equitable powers with the 2009 permanent injunction and the 2011 contempt order. The Washington Constitution grants superior courts these equitable powers. WASH. CONST. art. IV, § 6.

James contends that the court exceeded its jurisdiction because it only retained jurisdiction "for the sole purpose of reviewing, as necessary, whether or not James is complying with this [p]ermanent [i]njunction."[19] James argues that paragraph 3.10 of the 2011 order is a new order and not enforcement of the 2009 order. Paragraph 3.10 provides:

---

[18] CP at 118-122.
[19] CP at 720 (2009 Permanent Injunction).

James shall replace the rockery, which provides lateral support for the Cartwright pool, that he moved and return it to its prior condition.[20]

His argument is not persuasive. First, the King County Superior Court's retention of jurisdiction here was nothing more than a case management tool to ensure that the same judge would hear issues arising in this case. And, second, James failed to timely appeal the April 22, 2011 order.

The court entered its order after making a site visit of the property. The court imposed remedial sanctions on James if he failed to fully comply with the April 22, 2011 order,[21] which required James to:

- Comply with the recommendations of the bamboo expert, Favero Greenforest, including the removal of existing bamboo along the shared property line, installing a proper seamless barrier, and replanting any bamboo to no closer than three to five feet from the shared boundary. (FF at 3.2)
- Remove any structures used to aid the bamboo to grow higher than 12 feet and to reduce all bamboo to 12 feet in height that were aided by the structures. (FF at 3.4, 3.6)
- Assume all reasonable replacement costs of any disturbance to the structure of property caused by the removal of bamboo originating from the James's property. (FF at 3.5)
- Remove the light directed at Cartwright's property as described in May 15, 2009 order. (FF at 3.7)
- Pay the cost for replacing the survey markers that James removed between the two properties. (FF at 3.9)
- Replace the rockery, which provides lateral support for Cartwright's pool, that he moved, and return it to its prior condition. (FF at 3.10)
- Payment of $932.40 to Cartwright for costs incurred in retaining the expert, Greenforest. (FF at 3.12)

James did not appeal the April 22, 2011 order. He also did not comply with its provisions. He failed to prevent the continued invasion of the bamboo onto Cartwright's property. In October 2011, Cartwright's counsel wrote James requesting that he comply

---

[20] CP at 1003.
[21] CP at 1001-03.

5

with the court's order.[22] The letter included an updated report from Greenforest and a geotechnical engineer documenting the noncompliance with the court's order.[23] James paid the outstanding judgment after receiving counsel's letter, but did not respond to the other issues set forth in the letter until January 24, 2012, when he filed a motion to permit entry on Cartwright's land to remove bamboo.[24] On February 27, 2012, the trial court denied the motion and issued a show cause order to determine why all bamboo should not be removed from his and Cartwright's property as previously ordered by the court on May 15, 2009.[25]

James violated both the permanent injunction and the court's contempt/enforcement order of April 22, 2011. After a show cause hearing on March 9, 2012, the court issued an order requiring James to hire Bruce Magnotti, Cartwright's bamboo expert, and to remove all bamboo on the property west of the public trail bordering the property and, further, to pay Cartwright's attorney fees and expert costs incurred in responding to James's motion.[26] James did not appeal the March 27, 2012 order. He did remove the bamboo, although he did not hire Magnotti.

Cartwright moved to replace the rockery and return it to its previous condition as the court ordered on April 22, 2011. After an evidentiary hearing on March 30, 2012, the court issued its April 12, 2012 order in which it ordered an independent geotechnical engineer to visit the properties to advise the court on whether James's reconfiguration of the rockery destabilized Cartwright's property and, if destabilized, what needed to be

---

[22] CP at 1363.
[23] CP at 1366 (Greenforest Report); CP at 1369 (Geotechnical Assessment).
[24] CP at 1235.
[25] CP at 1286.
[26] CP at 1582 (March 27, 2012 order).

done to stabilize it.[27] The court also requested an estimated cost of repairs. The court further ordered that plantings be installed to replace the bamboo pursuant to its April 22, 2011 order, be maintained at a height no greater than 12 feet above the public trail, and prohibited ornamental plantings. The court reserved ruling on fees and costs related to this motion.[28]

The parties agreed to hire Kurt Merriman, as the independent geotechnical engineer. Before Merriman inspected the property, James completed significant remediation work on the rockery.[29] On June 28, 2012, the court issued an order requesting that Merriman address three questions: (1) whether reconfiguration of the rockery destabilized Cartwright's property; (2) if so, what, if anything, needs to be done; and (3) the estimated cost and repair.[30] James did not appeal this order.

During Merriman's first inspection, he found two "details" needed to still be taken care of in order to clean up and fully support the soil under Cartwright's property. To replace the rocks that had been removed, a 2 or 3 block high wall should support the soils. The second detail was the need for a small cast-in-place concrete wall to replace the rotting timber boards under James's fence.[31]

James timely appealed the following orders:

- September 7, 2012, Order Confirming Final Report of Kurt Merriman and Granting Award of Fees and Costs.
- September 28, 2012, Order re Reconsideration of September 7, 2012 order.
- October 17, 2012, Order Granting Plaintiff's Motion for Reconsideration.
- October 18, 2012, Findings, Conclusions and Order Granting Defendants' Petition for Attorneys' and Experts' Fees and Expenses.

---

[27] CP at 1670-71.
[28] CP at 1671.
[29] CP at 1711-12. Declaration of Thomas Cartwright stating that several workers added large boulders and dug them into the ground.
[30] CP at 1895 (Order on Motion to Confirm Expert's Report).
[31] CP at 1863 (Merriman Report May 2, 2012).

- October 18, 2012, Judgment Summary.

The trial court entered the September 7, 2012 order confirming Merriman's final report and awarded fees and costs finding:[32]

- James's post-trial reconfiguration removed subjacent support of some of the soils on Cartwright's property. (FF 1)
- No causal connection between deck settlement and cracking around pool due to the post-trial rockery work. (FF 2)
- No evidence of slope instability presently. (FF 3)
- James has completed all but one repair and reconfiguration of property. (FF 4)
- James had to protect the exposed soils on the low slope between Cartwright's fence and James's fence. (FF 5)

The court then accepted Merriman's conclusions and required James to pay all of Cartwright's reasonable attorney and expert fees and expenses relating to the enforcement of the April 2011 order, including securing stabilization of the slope.[33]

James moved to reconsider.[34] The reconsideration was based on Merriman's second inspection to view the remaining task of protecting the exposed soils on the low slope. At that inspection, Merriman noted that "recent repairs have accomplished 99% of the suggested stabilization recommendations."[35] The September 28, 2012 order gave Cartwright a chance to respond and James to reply to that response.[36] On October 17, 2012, the court granted James's motion for reconsideration striking paragraph (c) of the order confirming Merriman's final report.[37] The court endorsed all other aspects of the September 7, 2012 order.

---

[32] CP at 2023-24 (June 28, 2012 order).
[33] CP at 2025 (September 7, 2012 order).
[34] CP at 2026 (Motion for Reconsideration/Clarification).
[35] CP at 2033-34 (Merriman Final Report August 10, 2012).
[36] CP at 2198 (September 28, 2012 order regarding reconsideration of September 7, 2012 order).
[37] Paragraph (c) provided:
    Having completed the first of Mr. Merriman's two slope remediation steps (the replacement of the timber wall Mr. James installed with a concrete block wall), Mr. James shall complete the second remediation step to stabilize the top of the slope

In sum, it is clear that the court had subject matter jurisdiction.

Untimely Appeal

The trial court held James in contempt in April 2011 and awarded attorney fees and expenses. Cartwright contends that James's notice of appeal filed on October 31, 2012, was untimely under RAP 5.2(a) because it was filed more than 30 days after three of the orders:

- April 22, 2011, Order on Defendants' Motion for Contempt and for an Order Enforcing And/Or Clarifying the Terms of the May 15, 2009 Permanent Injunction.
- April 12, 2012, Order re Enforcement of Permanent Injunction.
- June 28, 2012, Order on Defendants' Motion for Order Confirming Expert's Report.

Cartwright is correct. Although James's appeal of the attorney and fee award is timely, he is precluded from challenging the legal basis for that award where he failed to timely appeal the earlier judgments establishing the award's legal basis. Bushong v. Wilsbach, 151 Wn. App. 373, 377, 213 P.3d 42 (2009). An appeal of a contempt order does not "bring forward the original judgment for review because the appeal is more than 30 days from the judgment." Griffin v. Draper, 32 Wn. App. 611, 614, 649 P.2d 123 (1982). "Generally, under the collateral bar rule, a court order cannot be collaterally attacked in contempt proceedings arising from its violation, since a contempt judgment will normally stand even if the order violated was erroneous or was later ruled invalid." In re Det. of Broer, 93 Wn. App. 852, 858, 957 P.2d 281 (1988) (internal quotation marks omitted) (quoting In re J.R.H., 83 Wn. App. 613, 616, 922 P.2d 206 (1996)); see also Dike

---

as outlined on page 2 of the Final Merriman report, at Mr. James' expense. On or before September 14, 2012, plaintiff is to provide a specific plan to defendants regarding details of the fill placement, materials, location and cost. Should defendants fail to approve of the plan they may submit together with plaintiff's proposal their objections and/or counter-proposal including cost to the Court on or before September 21, 2012.

v. Dike, 75 Wn.2d 1, 8, 448 P.2d 490 (1968) ("[W]here the court has jurisdiction of the parties and of the subject matter of the suit and the legal authority to make the order, a party refusing to obey it, however erroneously made, is liable for contempt" since such order, though erroneous, is a lawful order.).

All of the orders at issue in this case stem from the court's 2009 permanent injunction, which the court entered following a seven day bench trial.[38] At the conclusion of that trial, the court entered findings of fact and conclusions of law.[39] James appealed both the findings and the permanent injunction order awarding Cartwright attorney fees on May 21, 2009.[40] But, almost four months later, the case was voluntarily dismissed.[41] Consequently, those findings of fact and conclusions of law which form the basis for all of the subsequent trial orders are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 49 (1992).

The April 22, 2011 order clarified the 2009 order and found James in contempt. It was a final order. An adjudication of contempt is a final order if "the party's willful resistance to the contempt order . . . is established, and the sanction is a coercive one designed to compel compliance with the court's order." In re Marriage of Wagner, 111 Wn. App 9, 15-16, 44 P.3d 860 (2002). The court found James in contempt of the 2009 permanent injunction. The court established deadlines for James to complete the tasks and imposed sanctions should he fail to do so.

James contends he is not appealing the April 22, 2011 order of contempt, but rather he is appealing only paragraph 3.10 of that order (requiring him to replace the

---

[38] CP at 718-721 (Permanent Injunction).
[39] CP at 681-99 (Findings of Fact and Conclusions of Law).
[40] CP at 2564.
[41] CP at 2571.

rockery to its original condition).[42] He argues that the rockery was not mentioned in the 2009 injunction and that therefore the court was without jurisdiction to enter the order. We have already determined that this is not correct. Moreover, on March 27, 2012, the court expressly found that James's attempt to move for reconsideration of the April 22 order was untimely:

> In accordance with the Court's continuing jurisdiction to ensure that James is reasonably dealing with the terms of this court's Permanent Injunction entered May 15, 2009, the parties are to appear for an evidentiary hearing . . . to present testimony, if any, regarding compliance with the Court's Order of April 22, 2011 requiring Plaintiff to replace the rockery and return it to its prior condition. Reconsideration of this order is untimely. [43]

On March 27, the court entered an order requiring James to remove the bamboo. The court also set an evidentiary hearing to address James's violation of the April 22, 2011 order.[44]

The April 12, 2012 order was also not timely appealed within the 30 days required under RAP 5.2(a). As such, its findings and conclusions are likewise verities on appeal. Cowiche Canyon, 118 Wn.2d at 808. The trial court found that James removed survey markers between the properties as well as portions of the rockery, which provides lateral support for Cartwright's pool, and failed to return it to its prior condition.[45]

As discussed above, that order appointed an independent engineer to determine whether James's reconfiguration of the rockery destabilized Cartwright's property and, if so, what needed to be accomplished to stabilize the property. The order further required that plantings be maintained at a height no greater than 12 feet above the lowest point. This was in accord with the 2009 order and the height restriction did not apply to

---

[42] CP at 1003.
[43] CP at 1585-86 (March 27, 2012 order).
[44] CP at 1582.
[45] CP at 1002, FF 2.4, 2.5 (April 22, 2011 order).

unsupported plantings. This order also compelled James to comply with the court's previous order.

Striking Declaration

James argues that the trial court erroneously struck Jennifer James's declaration dated March 28, 2012.[46] First, James did not timely appeal the order and thus the striking of the declaration is not before this court. And, second, James admits the declaration contained admissible hearsay but without citing to the record fails to tell the court what should have been admitted. Evidentiary arguments without legal arguments and citations to the record should be rejected. Bercier v. Kiga, 127 Wn. App 809, 824, 103 P.3d 232 (2004).

Due Process/Jury Trial

James argues that he was denied his right to a jury trial. The basis of this action lay in Cartwright's motion to enforce the trial court's 2009 permanent injunction. There is no right to a jury trial in civil contempt proceedings. State ex rel. Herron v. Browet, Inc., 103 Wn.2d 215, 218, 691 P.2d 571 (1984). The alleged contemnor is not entitled to a jury trial in a civil contempt proceeding to determine whether the contemnor is in contempt. In re Marriage of Haugh, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990). The April 2011 order specifically required James to move the rockery back to the condition it was in before he adjusted the rocks and planted bamboo.

Moreover, James does not assert or point to anywhere in the record that he requested a jury trial. See CR 38(b), (d) (jury trial waived unless requesting party files and serves jury demand and pays the jury fee); see also Sackett v. Santilli, 101 Wn. App. 128, 5 P.3d 11 (2000), aff'd on other grounds, 146 Wn.2d 498, 47 P.3d 948 (2002)

---

[46] CP at 1520.

(implied consent to a bench trial can be construed in the absence of a demand for a jury in compliance with the procedural rules).

James's argument that he was not afforded due process is equally unpersuasive. The April 2011 order enforcing the 2009 injunction states that James removed portions of the rockery that provided lateral support and failed to return it to its prior condition.[47] He contends that he was not afforded any right to address this issue. This is simply incorrect. The record is replete with references to the rockery and James's removal of boulders and planting bamboo in the area.

A trial court may impose remedial sanctions to ensure compliance with a court order or "for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3), 030. This the trial court did. James was afforded multiple opportunities to assert his position. "Due process of law guarantees 'no particular form of procedure; it protects substantial rights.'" Mitchell v. W.T Grant Co., 416 U.S. 600, 610, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974). James's rights were protected here by the evidentiary hearings, the court's on-site visit, as well as the independent expert's opinion. James was afforded the opportunity to be heard and was not deprived of any property rights. Mitchell, 416 U.S. at 611. There was no due process violation.

Attorney Fees

Both the 2009 permanent injunction and RCW 7.21.030(3) authorized the court to award attorney fees in its discretion. RCW 7.21.030(3) states that a court may order a person found in contempt of court to pay a party's costs incurred in connection with the contempt proceeding, including reasonable attorney fees. The statute also permits the

---

[47] CP at 1002.

award of attorney fees incurred by a party in defending an appeal of a contempt order. Johnston v. Beneficial Mgmt. Corp. of Am., 26 Wn. App. 671, 677, 614 P.2d 661 (1980) (citing former RCW 7.20.100, *repealed by* LAWS OF 1989, ch. 373, § 28), rev'd on other grounds, 96 Wn.2d 708, 638 P.2d 1201 (1982).

James's repeated failure to comply with the contempt order forced the defendants to file multiple motions to enforce that order as well as confer with multiple experts to see what could be done to accomplish compliance.

This court will not disturb a trial court's decision to grant or deny attorney fees in the absence of an abuse of discretion. Bering v. SHARE, 106 Wn.2d 212, 247, 721 P.2d 918 (1986) (citing former RCW 7.20.100); Mahler v. Szucs, 135 Wn.2d 398, 435, 957 P.2d 632, 966 P.2d 305 (1998). A trial court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. Van Pham v. City of Seattle, 159 Wn.2d 527, 538, 151 P.3d 976 (2007).

James argues without citation to the record that block billing is unacceptable. But here, the lawyers submitted extensive billing and the court found the hours reasonable. The trial court used the lodestar calculation to compute the award of fees. Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 582, 593-94, 675 P.2d 193 (1983). The trial court entered extensive findings of fact and conclusions of law in granting the attorney fees and expenses incurred. The trial court is in the best position to determine the lodestar amount. Miller v. Kenny, __ Wn. App. __, 325 P.3d 278, 304 (2014). Here, the trial court was aware of its duty under both Bowers and Mahler in considering the request for fees. The written findings of fact and conclusions of law demonstrate that the trial judge was well-versed in the legal standards that should be applied to such fee request. There is no abuse of discretion.

14

Both sides request attorney fees on appeal. Cartwright is the prevailing party and under RCW 7.21.030(3) is entitled to attorney fees on appeal. A party who successfully defends the appeal of a contempt order may recover attorney fees under RCW 7.21.030(3). In re Marriage of Curtis, 106 Wn. App 191, 202, 23 P.3d 13 (2001). Because Cartwright is awarded attorney fees and costs for the earlier stated reasons, we need not decide whether Cartwright is also entitled to fees because the action is frivolous.

Affirmed.

Trickey, J

WE CONCUR: