**FILED**
**FEBRUARY 26, 2026**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| TAMMY AND JULIE CLOSNER, | ) | |
| | ) | No. 40991-1-III |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PEACEHEALTH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

COONEY, J. — Tammy Closner underwent heart surgery at a PeaceHealth facility. Thereafter, she and Julie Closner,[1] her now ex-wife, filed a complaint against PeaceHealth alleging medical negligence and loss of consortium.[2] On PeaceHealth's motion for summary judgment, the superior court dismissed the Closners' claims. The Closners appeal. In response, PeaceHealth argues this court should deny review because the Closners did not designate a report of proceedings. PeaceHealth also argues this court's review should be limited to the arguments the Closners raised below.

---

[1] We use first names where individuals share a last name. Although now divorced, we refer to Tammy and Julie collectively as the "Closners."

[2] The complaint was not designated for our review. We glean these facts from the parties' briefs.

We decline PeaceHealth's request to dismiss the appeal, limit our review to the issues and evidence presented to the trial court, and affirm the trial court's order on summary judgment.

BACKGROUND

On March 16, 2020, Tammy underwent heart surgery at a PeaceHealth facility. Thereafter, the Closners filed a complaint against PeaceHealth alleging that the surgery was ineffective in resolving Tammy's condition and that PeaceHealth employees did not exercise reasonable care in providing follow-up care, resulting in a delay of effective treatment.

In August 2024, PeaceHealth filed a motion for summary judgment dismissal of the Closners' claims. PeaceHealth argued the Closners failed to create a genuine issue of material fact as to their medical negligence claim. Specifically, PeaceHealth asserted the Closners failed to present qualified expert testimony regarding the relevant standard of care, a breach of that standard, and causation. In response, the Closners filed the "Declaration of Carlos Mena-Hurtado, MD." Clerk's Papers (CP) at 32-33. Because this appeal hinges on the sufficiency of Dr. Mena-Hurtado's declaration, we cite it in full:

> Carlos Mena-Hurtado, MD, declares the following to be true and under penalty of perjury under the laws of the State of Washington.
>
> 1. I am over the age of 18 and competent to testify to the matters below.
> 2. I am board certified in Cardiovascular Disease and Interventional Cardiology. My resume is attached.

3. I have reviewed records from Peacehealth [sic] and the University of Washington concerning the care and treatment of the Plaintiff Tammy Closner.

4. I am familiar with the standard of care for reasonably prudent treatment decisions and follow up care applicable to the circumstances of Ms. Closner's case, as reflected in the material I reviewed. It is a national standard.

5. Ms. Closner underwent coronary bypass surgery on March 16th, 2020.

6. She continued with intermittent symptoms.

7. Coronary CTA (cat scan) done on April 20th, 2021 showed "totally occluded" proximal LAD (left anterior descending) artery. No follow up angiogram was recommended.

8. Her symptoms continued.

9. Stress echocardiogram was performed about a year later, on March 17, 2022 which displayed ischemia and called for angiography and possible intervention.

10. Coronary angiography was performed on April 12th, 2022. The angiogram demonstrated severe stenosis in the same area of the earlier procedure clearly calling for intervention.

11. No intervention was recommended or undertaken, falling below the standard of care.

12. She underwent balloon angioplasty at UW on April 28th, 2022 with good result.

13. To a reasonable degree of medical certainty, appropriate follow up on the 2021 CTA would have resulted in cardiac angiography, which would have led to the same balloon procedure being performed much sooner, providing the same relief.

CP at 32-33.

In reply to this submission, PeaceHealth asserted Dr. Mena-Hurtado's declaration was insufficient to defeat summary judgment because it (1) was conclusory, (2) lacked specific facts, (3) did not identify which providers were negligent or when the alleged negligence occurred, and (4) did not state how the alleged negligence was committed. The trial court agreed with PeaceHealth, granted its motion for summary judgment, and

dismissed the Closners' complaint. The Closners timely moved for reconsideration.[3]

The trial court denied their motion.

The Closners timely appeal. In response, PeaceHealth filed a motion to dismiss the appeal, arguing the Closners failed to provide this court with a report of proceedings as required by RAP 9.1. The motion to dismiss was denied by a commissioner of this court.

ANALYSIS

As an initial matter, PeaceHealth renews its motion to dismiss this appeal based on the Closners' failure to provide a report of proceedings. PeaceHealth also challenges the Closners' argument, raised for the first time on appeal, that implicates PeaceHealth employee Dr. Yamac Gungor. PeaceHealth contends the Closners did not present this argument to the trial court and the record lacks admissible evidence of Dr. Gungor's involvement in Tammy's care. We deny PeaceHealth's renewed motion to dismiss and agree with PeaceHealth that the record lacks admissible evidence implicating Dr. Gungor.

In addition, in its response brief, PeaceHealth renews its motion to dismiss this appeal which was previously rejected by a commissioner of this court. A person may object to a commissioner's ruling "only by a motion to modify the ruling directed to the

---

[3] The Closners did not designate for our review their motion for reconsideration nor any briefing submitted by the parties on the motion.

4

judges of the court served by the commissioner or clerk." RAP 17.7(a). The motion to modify the ruling must be served and filed in the appellate court no later than 30 days after the commissioner's ruling has been filed. *Id.* "If an aggrieved party fails to seek modification of a commissioner's ruling within the time permitted by RAP 17.7, the ruling becomes a final decision of this court." *In re Det. of Broer v. State*, 93 Wn. App. 852, 857, 957 P.2d 281 (1998).

PeaceHealth did not move to modify Commissioner Landrus' July 15, 2025 denial of its motion to dismiss. Commissioner Landrus' order is the order of this court.

As to the failure to designate the report of proceedings, a motion for summary judgment is decided based on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." CR 56(c). Here, in compliance with CR 56(f), the trial court's order on summary judgment memorialized all the documents and evidence it considered in making its decision. The Closners designated these documents for our review. Consequently, the information before us on review mirrors the information considered by the trial court. Because we conduct a de novo review of the record before the trial court, the report of proceeding is inconsequential.

PeaceHealth next raises a two-fold argument in response to the Closners' contention that "Dr. Gungor [was] the primary negligent actor," raised for the first time on appeal. Appellant's Reply Br. at 3. First, PeaceHealth contends that any argument concerning Dr. Gungor is unpreserved as it was not raised below. Secondly, PeaceHealth

claims the record lacks admissible evidence of Dr. Gungor's involvement in Tammy's care. We agree with PeaceHealth's second proposition.

A trial court must consider all admissible evidence presented to it when ruling on a motion for summary judgment and is precluded from considering inadmissible evidence. *Haley v. Amazon.com Servs., LLC*, 25 Wn. App. 2d 207, 220, 522 P.3d 80 (2022); *Dunlap v. Wayne*, 105 Wn.2d 529, 535, 716 P.2d 842 (1986). Consequently, answers to interrogatories may be considered in a motion for summary judgment provided such answers satisfy the other requirements of CR 56. *Am. Linen Supply Co. v. Nursing Home Bldg. Corp.*, 15 Wn. App. 757, 763-64, 551 P.2d 1038 (1976). CR 33(a) requires that interrogatories be "answered separately and fully in writing under oath." The answers to interrogatories must also be signed by at least one attorney of record. CR 26(g).

PeaceHealth filed the declaration of its attorney, Sarah Desautels, in conjunction with its motion for summary judgment. Ms. Desautels attached an unsigned copy of Tammy's answers to PeaceHealth's first set of interrogatories to her declaration. Tammy writes about the treatment she received from Dr. Gungor in her answers. The Closners then rely on these answers in an attempt to persuade us to reverse the trial court's order on summary judgment. Fatal to the Closners' argument, however, is the answers to the interrogatories are not signed under oath by Tammy nor signed by her attorney. Moreover, documents are not deemed admissible as evidence by simply attaching the

documents to a declaration made in support of a motion for summary judgment or opposition thereto. *In re the Est. of Ferara*, 29 Wn. App. 2d 139, 156, 540 P.3d 194 (2023). Tammy's answers to PeaceHealth's first set of interrogatories are therefore inadmissible. Thus, the record lacks any admissible evidence related to Dr. Gungor's involvement in Tammy's care.

Turning to the merits, the Closners argue the trial court erred in granting PeaceHealth's motion for summary judgment. We disagree.

We review orders on summary judgment de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is only appropriate if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c). The moving party bears the initial burden of establishing that there are no disputed issues of material fact. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

In deciding a motion for summary judgment, the evidence is considered in a light most favorable to the nonmoving party. *Keck*, 184 Wn.2d at 370. If the moving party satisfies its burden, then the burden shifts to the nonmoving party to establish there is a genuine issue for the trier of fact. *Young*, 112 Wn.2d at 225-26. While questions of fact typically are left to the trial process, they may be treated as a matter of law if "reasonable

minds could reach but one conclusion." *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985). A nonmoving party may not rely on speculation or having its own affidavits accepted at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Instead, a nonmoving party must put "forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists." *Id.*

Under RCW 7.70.040(1), the plaintiff in a medical negligence claim bears the burden of showing:

> (a) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances;
>
> (b) Such failure was a proximate cause of the injury complained of.

Generally, a plaintiff must support each element of their medical malpractice claim with qualified expert testimony. *Campanelli v. PeaceHealth Sw. Med. Ctr.*, 34 Wn. App. 2d 24, 36, 565 P.3d 933, *review denied*, 5 Wn.3d 1012, 577 P.3d 375 (2025). "If a plaintiff lacks competent expert testimony to create a genuine issue of material fact . . . a defendant is entitled to summary judgment." *Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 86, 419 P.3d 819 (2018). A genuine issue of material facts exists where the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The Closners argue the trial court erred in granting summary judgment because Dr. Mena-Hurtado's declaration, considered in the light most favorable to the Closners,

supports a cause of action for a two-year delay in treatment of her stenosis. PeaceHealth responds that Dr. Mena-Hurtado's declaration fails to identify the applicable standard of care, which providers at PeaceHealth were negligent, and when the purported negligence occurred. We agree with PeaceHealth.

In *Reyes*, our Supreme Court affirmed a trial court's order dismissing the plaintiff's claim on summary judgment, reasoning that "[a]llegations amounting to an assertion that the standard of care was to correctly diagnose or treat the patient are insufficient." 191 Wn.2d at 89. Rather, the court held that the medical expert "must state specific facts showing what the applicable standard of care was and how the defendant violated it." *Id.* The Supreme Court explained, "[W]e do not require affiants to aver talismanic magic words, but allegations must amount to more than conclusions of misdiagnosis, with a basis in admissible evidence that can support a claim." *Id.* The *Reyes* court made it clear that negligence cannot be inferred from a bad result. *See id.*

Here, Dr. Mena-Hurtado's declaration fails to create a genuine issue of material fact to support the Closners' medical negligence claim. Without articulating the applicable standard of care relevant to Tammy's treatment, Dr. Mena-Hurtado merely states, "I am familiar with the standard of care for reasonably prudent treatment decisions and follow up care applicable to the circumstances of Ms. Closner's case, as reflected in the material I reviewed. It is a national standard." CP at 32. Dr. Mena-Hurtado's declaration further fails to identify which medical providers were negligent, either by

name or description, how they were negligent, and when the purported negligence occurred. Instead, Dr. Mena-Hurtado simply explains, "Ms. Closner underwent coronary bypass surgery on March 16th, 2020," that a "[c]oronary angiography was performed on April 12th, 2022" "demonstrat[ing] severe stenosis in the same area of the earlier procedure clearly calling for intervention," and that "[n]o intervention was recommended or undertaken, falling below the standard of care." CP at 32-33. In considering the evidence in a light most favorable to the Closners, the record lacks the competent expert medical testimony necessary to create a genuine issue of material fact.

We affirm the trial court's order granting summary judgment dismissal of the Closners' complaint.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____                    _____
Staab, A.C.J.                                                              Murphy, J.